Courtney Haveman and             :
Amanda Spillane,                 :
                    Petitioners  :
                                 :
          v.                     :
                                 :
Bureau of Professional and       :
Occupational Affairs, State Board of :
Cosmetology of the Commonwealth  :
of Pennsylvania,                 :    No. 765 M.D. 2018
                    Respondent   :    Argued: June 11, 2020


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COVEY                          FILED: August 25, 2020


          Before this Court is the Application for Summary Relief (Application) filed by Courtney Haveman (Haveman) and Amanda Spillane (Spillane) (collectively, Petitioners) filed in this Court's original jurisdiction. After review, we grant the Application.


**Background**

          Petitioners are Pennsylvania residents who applied for limited cosmetology licenses from the Bureau of Professional and Occupational Affairs, State Board of Cosmetology (Board), to become licensed estheticians.[1] Although

_____

[1] Section 1 of the Act of May 3, 1933, P.L. 242, commonly referred to as the Beauty Culture Law (Law), defines "esthetician" as "an individual licensed by the [Board] to practice esthetics." 63 P.S. § 507. "Esthetics" is defined therein as "the practice of massaging the face, applying

Haveman and Spillane met all of the other requirements, the Board denied their applications to sit for the esthetician examination and receive a license because they did not demonstrate good moral character as required by Section 5(a) of what is commonly referred to as the Beauty Culture Law (Law),[2] 63 P.S. § 511(a).[3]

cosmetic preparations, antiseptics, tonics, lotions or creams to the face, removing superfluous hair by tweezers, depilatories or waxes and the dyeing of eyelashes and eyebrows." *Id*.

Section 5(b) of the Law offers limited licenses for estheticians, nail technicians and natural hair braiders. Regarding esthetician licenses, Section 5(b)(1) of the Law states:

> An applicant for an esthetician license shall have completed three hundred hours of instruction in esthetics in a licensed school of cosmetology and passed an examination limited to that practice. Licensed estheticians may operate a salon limited to that license. An applicant may be permitted to apply to take a written examination upon completion of at least two hundred fifty hours of instruction in esthetics in a licensed school of cosmetology. The examination shall include both theoretical and procedural skill questions as prescribed by the board. Any applicant may apply and is eligible for licensure upon (i) passing the written examination, (ii) completion of the required three hundred hours of instruction, and (iii) certification by a duly licensed school of satisfactory completion of all program requirements.

63 P.S. § 511(b).

[2] Act of May 3, 1933, P.L. 242, *as amended*, 63 P.S. §§ 507-527.

[3] According to the Petition for Review in the Nature of a Complaint for Declaratory and Injunctive Relief (Petition), at the time it was filed, Haveman was a 26-year-old stay-at-home mother. Between 2011 and 2013, she pled guilty to several misdemeanors stemming from three incidents: a driving under the influence (DUI) charge for which she was sentenced to three days in jail, illegal possession of paraphernalia for smoking marijuana, and hitting a security guard while drunkenly resisting arrest at a casino, for which she was sentenced to two years of probation. After the casino incident, Haveman joined Alcoholics Anonymous. She has been sober ever since. *See* Petition ¶¶ 12-18. The Board provisionally denied Haveman's application in July 2016, but notified her that she could request a hearing. *See* Petition ¶¶ 9-10. Haveman did not request a hearing or appeal from the Board's decision; rather, she sent the Board a reconsideration request, which the Board did not answer. *See* Petition ¶¶ 10-11, 39-40.

When the Petition was filed, Spillane was a 33-year-old waitress who suffered from depression, anxiety and bipolar disorders, for which she began to self-medicate in high school and, eventually, developed a drug habit. Between 2005 and 2011, she pled guilty to a series of crimes including drug possession, DUI, and thefts and burglaries to fund her drug use. At age 26, she was incarcerated for two years. While incarcerated, she participated in intensive therapy and classes on resocialization and overcoming domestic abuse. She was released from a halfway house in 2013 and remains on probation until sometime in 2020. Spillane claims that she has turned her life

2

**Facts**

On December 11, 2018, Petitioners filed a Petition for Review in the Nature of a Complaint for Declaratory and Injunctive Relief (Petition), seeking: (1) a declaration that the good moral character requirement of Section 5 of the Law, and all rules, regulations, policies and practices of the Board implementing that requirement are unconstitutional and facially violate the due process and equal protection clauses of the Pennsylvania Constitution; (2) an order permanently enjoining the Board from enforcing that provision against Haveman, Spillane or anyone else; and (3) attorney's fees, costs and expenses.[4]

On February 11, 2019, the Board filed preliminary objections to the Petition on the basis that the Petition was not legally sufficient (demurrer), timely or ripe for review, and because Petitioners lacked standing and failed to exhaust their administrative remedies. On March 13, 2019, Petitioners filed their response to the preliminary objections. On December 9, 2019, this Court overruled the Board's preliminary objections and directed the Board to answer the Petition. *See Haveman v. Bureau of Prof'l & Occupational Affairs, State Bd. of Cosmetology* (Pa. Cmwlth. No. 765 M.D. 2018, filed December 9, 2019). In the meantime, the parties conducted

---

around and has been sober since 2010. *See* Petition ¶¶ 44-56. The Board provisionally denied Spillane's application. After a hearing, the Board denied Spillane's application in May 2015, stating: "When balancing the frequency and nature of [Spillane's] criminal convictions against the [relatively sparse] mitigating evidence she has offered, this Hearing Examiner finds that [Spillane] has not sufficiently demonstrated that she currently possesses the good moral character necessary to take the Esthetician Examination and practice the profession." Appl. Ex. 16 at 29. Spillane did not appeal from the Board's decision.

[4] According to the Petition, Petitioners "are **not** challenging their initial license denials or seeking damages based on those denials. They are seeking relief only prospectively, based on the unconstitutional burden the good [moral] character requirement is imposing on them now." Petition ¶ 122 (emphasis added). Because this action involves solely a facial challenge, Petitioners were not required to exhaust their administrative remedies. *See Lehman v. Pa. State Police*, 839 A.2d 265 (Pa. 2003); *see also Keystone ReLeaf LLC v. Pa. Dep't of Health*, 186 A.3d 505 (Pa. Cmwlth. 2018).

3

discovery. On January 8, 2020, the Board filed an answer and new matter to the Petition. On January 30, 2020, Petitioners filed a reply to the Board's new matter.

Petitioners filed the Application on December 20, 2019. On January 6, 2020, the Board opposed the Application. On January 21, 2020, Petitioners filed a brief in support of their Application. On February 20, 2020, the Board filed its brief in opposition to the Application and Petitioners filed a reply brief on May 22, 2020. The parties presented oral argument on June 11, 2020. The matter is ready for this Court's disposition.

## Discussion

> [Pennsylvania Rule of Appellate Procedure] 1532(b) provides that '[a]t any time after the filing of a petition for review in an . . . original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear.' Pa.R.A.P. 1532(b). 'An application for summary relief is properly evaluated according to the standards for summary judgment.' *Myers v. Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015). That is, in ruling on a[n application] for summary relief, the **evidence must be viewed in the light most favorable to the non-moving party** and **the court may enter judgment only if**: (1) there are **no genuine issues of material fact**; **and** (2) the **right to relief is clear as a matter of law**.

*Flagg v. Int'l Union, Sec., Police, Fire Prof'ls of Am., Local 506*, 146 A.3d 300, 305 (Pa. Cmwlth. 2016) (emphasis added). "An application for summary relief is appropriate where a party asserts a challenge to the constitutionality of a statute and no material facts are in dispute." *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1220 (Pa. Cmwlth. 2018).

Here, Petitioners contend that there are no material facts in dispute, and they are entitled to relief because the good moral character requirement

4

(Requirement), on its face,[5] violates substantive due process on the basis that: (1) cosmetology does not present unique risks of crime; (2) the Requirement irrationally discriminates within the beauty industry; (3) the Board's decisions are arbitrary; and (4) in light of the Board's other powers, the Requirement is unnecessary. Petitioners also assert that the Requirement violates the right to equal protection because it irrationally distinguishes cosmetology applicants from barbers, other salon employees and practicing cosmetologists, and needlessly discriminates against people with criminal histories.

The Board responds that genuine issues of material fact exist that preclude summary relief in Petitioners' favor, and Petitioners' right to relief is not clear because the Requirement complies with the substantive due process and equal protection mandates in the Pennsylvania Constitution.

## A. Clear Right to Relief

The United States (U.S.) Supreme Court has cautioned: "We must keep in mind that ''[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'' *Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 329 . . . (2006) (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652 . . .

---

[5] Constitutional challenges may be facial or as-applied.

> 'A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case.' *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 16 (Pa. Cmwlth. 2012) (quotation omitted). In contrast, an as-applied challenge 'does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right.' *Id.* (quotation omitted).

*E. Coast Vapor, LLC v. Pa. Dep't of Revenue*, 189 A.3d 504, 511 (Pa. Cmwlth. 2018). Here, Petitioners assert *only* a facial challenge in the instant matter. *See* Petition ¶¶ 3, 121, 123, 126-128, 132, 136-139, 143-144; *see also Haveman*, slip op. at 6-7, 18, 23-24; Appl. at 11-12, 30. Because Petitioners have not exhausted their administrative remedies, they could not have raised an as-applied challenge.

(1984) (plurality opinion)).” *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008).  Accordingly,

> [t]here is a strong presumption in the law that legislative enactments are constitutional.  *Christ the King Manor v. Dep't of Pub. Welfare*, 911 A.2d 624 (Pa. Cmwlth. 2006) (*en banc*), *aff'd per curiam*, . . . 951 A.2d 255 ([Pa.] 2008) . . . .  A court will not declare a statute unconstitutional unless the constitutional violation is clear, palpable, and plain.  *Id.*  The court will resolve all doubts in favor of constitutionality.  *Id.*  Thus, a party challenging the constitutionality of a statute has a heavy burden of persuasion.  *Id.*

*Phantom Fireworks*, 198 A.3d at 1221.  “Constitutional challenges to legislative enactments present this Court with questions of law . . . .”  *Germantown Cab Co. v. Phila. Parking Auth.*, 206 A.3d 1030, 1041 (Pa. 2019).

In the instant matter, Petitioners claim that the portion of Section 5(a) of the Law, which specifies, in relevant part, that “**[a]n applicant for a limited license shall** . . . **be of good moral character**,” 63 P.S. § 511(a) (emphasis added), is facially unconstitutional because it violates the substantive due process and equal protection clauses of the Pennsylvania Constitution.[6]

Preliminarily, the parties disagree on the proper standard for a facial constitutional challenge.  Petitioners assert that the *plainly legitimate sweep* standard (i.e., a statute is facially unconstitutional if a substantial number of its potential applications are invalid) is applicable.  *See* Petitioners' Br. at 12; see also Petitioners' Reply Br. at 13-14.  The Board contends that the *no set of circumstances* standard

---

[6] The parties refer to “cosmetology” interchangeably with “esthetics.”  Section 1 of the Law defines “cosmetologist” as “an individual who is engaged in the practice of cosmetology.”  63 P.S. § 507.  “Cosmetology” is defined therein as “also **includ[ing] the acts comprising the practice of** nail technology, natural hair braiding and **esthetics**.”  63 P.S. § 507 (emphasis added).  Hence, an esthetician's license is a limited cosmetology license.  Moreover, Section 4(a) of the Law similarly requires that cosmetology license applicants “shall be . . . of good moral character . . . .”  63 P.S. § 510(a).

(i.e., a statute is facially unconstitutional only if there is no set of circumstances under which the statute would be valid; that is, the law is unconstitutional in all of its applications) applies. *See* Board's Br. at 11-12, 14.

In *Germantown Cab Company*, the Pennsylvania Supreme Court clarified: "A statute is facially unconstitutional only where there are no circumstances under which the statute would be valid." *Germantown Cab Co.*, 206 A.3d at 1041; *see also Wash. State Grange*; *Clifton v. Allegheny Cty.*, 969 A.2d 1197 (Pa. 2009). "A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *Peake v. Commonwealth*, 132 A.3d 506, 517 (Pa. Cmwlth. 2015) (quoting *Commonwealth v. Brown*, 26 A.3d 485, 493 (Pa. Super. 2011)). Accordingly, our Supreme Court explained: "In determining whether a statute is facially invalid, courts do not look beyond the statute's explicit requirements or speculate about hypothetical or imaginary cases." *Germantown Cab Co.*, 206 A.3d at 1041; *see also Wash. State Grange*.

Because *Germantown Cab Company* is the Pennsylvania Supreme Court's most recent pronouncement on evaluating facial challenges, the Board is correct that the *Germantown Cab Company* Court's *no set of circumstances* standard applies in the instant matter. Thus, the Requirement portion of Section 5(a) of the Law is facially unconstitutional if, based on its text alone, "there are no circumstances under which [it] would be valid." *Germantown Cab Co.*, 206 A.3d at 1041.

### 1. Substantive Due Process

The due process clause of the Fourteenth Amendment to the [U.S.] Constitution provides that '[n]o [s]tate shall make or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law.' U.S. CONST. amend. XIV, § 1. Due process protections also emanate from the Pennsylvania Constitution, particularly Article I, Sections 1, 9, and 11[, PA. CONST. art. I, §§ 1, 9, 11]. *Khan* [*v. State Bd. of Auctioneer Exam'rs*], 842 A.2d

7

[936,] 945 [(Pa. 2004)]. Article I, Section 1 of the Pennsylvania Constitution provides: 'All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.' PA. CONST. art[.] I, § 1. As this [Supreme] Court has explained, substantive due process is the 'esoteric concept interwoven within our judicial framework to guarantee fundamental fairness and substantial justice.' *Khan*, 842 A.2d at 946 (quoting *Commonwealth v. Stipetich*, . . . 652 A.2d 1294, 1299 ([Pa.] 1995) (Cappy, J., dissenting)).

For substantive due process rights to attach, there must be a deprivation of a constitutionally protected interest or property right. *Khan*, 842 A.2d at 946. If the statute restricts a fundamental right, it is reviewed under strict scrutiny. If the statute impacts a protected but not fundamental right, then it is subject to rational basis review. *Khan*, 842 A.2d at 946-47; *Nixon v. Commonwealth*, . . . 839 A.2d 277, 287 ([Pa.] 2003); *cf. Wash*[.] *v. Glucksburg*, 521 U.S. 702, 721 . . . (1997) (stating that, under federal precedent, legislation restricting a right that is not fundamental is subject to rational basis review).

Pursuant to Article I, Section 1 [of the Pennsylvania Constitution], protected interests include the right of an individual to pursue his or her livelihood or profession. *Khan*, 842 A.2d at 945; *Nixon*, 839 A.2d at 288. . . .

[A]lthough the right to engage in a licensed profession is an important right, it is not a fundamental right. *See Nixon*, 839 A.2d at 288 (recognizing that the right to engage in a particular occupation is not a fundamental right).

*Germantown Cab Co.*, 206 A.3d at 1042-43. Accordingly, because Petitioners' right to practice limited cosmetology impacts an important right, the rational basis test applies. *See Germantown Cab Co.*; *see also Khan*.

The Pennsylvania Supreme Court has explained:

Due process challenges under the Pennsylvania Constitution are analyzed 'more closely' under the rational basis test

8

than due process challenges under the [U.S.] Constitution.[FN]15 *Nixon* [], 839 A.2d at 287-88 n.15. In *Gambone v. Commonwealth*, . . . 101 A.2d 634 ([Pa.] 1954), the Pennsylvania Supreme Court succinctly defined the rational basis test applicable to substantive due process challenges brought under the Pennsylvania Constitution as follows:

> [A] law which purports to be an exercise of the police power *must not be unreasonable, unduly oppressive or patently beyond the necessities of the case*, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests *the legislature may not* arbitrarily interfere with private business or *impose unusual and unnecessary restrictions upon lawful occupations.*

*Gambone*, 101 A.2d at 637 (emphasis added). In *Nixon* [], our Supreme Court reaffirmed that for 'substantive due process challenges brought under the Pennsylvania Constitution, the rational basis test is that announced by this Court in *Gambone.*' *Nixon* [], 839 A.2d at 277-78 n.15. This means that **the legislature can curtail the right to engage in a chosen occupation for an important reason, but it may not do so in a way that is overly broad,** *i.e.,* **'patently beyond the necessities of the case**.' *Gambone*, 101 A.2d at 637. . . .

> [FN]15 In the rational basis test used in equal protection and due process challenges brought under the [U.S.] Constitution, '**a court must uphold a statute as rational if it can conceive of any plausible reason for the statute**.' *Nixon* [], 839 A.2d at 287-88 n.15. In those challenges, it matters not whether a statutory classification will have some inequitable results. *Id.*

9

*Peake*, 132 A.3d at 518-19 (bold emphasis added; footnote omitted). "In addition, Pennsylvania balances the rights of the individual against the public interest." *Germantown Cab Co.*, 206 A.3d at 1044-45.

Hence, "[r]ational basis review requires this Court to examine whether [the Requirement portion of Section 5(a) of the Law] bears a rational relationship to a legitimate state purpose." *Germantown Cab Co.*, 206 A.3d at 1045.

### a. State Objective

The parties do not contest the legitimacy of the state purpose. The Pennsylvania Supreme Court has declared that "the right to practice one's chosen profession is subject to the lawful exercise of the Commonwealth's power to protect the health, safety, welfare, and morals of the public by regulating the profession." *Germantown Cab Co.*, 206 A.3d at 1044. According to the Board, the Law's preamble states that it is "[a]n Act [t]o promote the public health and safety by providing for . . . licensing and granting of permits for those who desire to engage in the profession of cosmetology . . . ." Board's Br. at 17; Board Answer to Petition at 19. In addition, the Pennsylvania Supreme Court has specifically ruled: "**The** [act commonly referred to as the] Barber License Law[7] and the [**Law**] have but one **purpose**, and that **is the protection of patrons of** barber and **beauty shops**." *Dep't of Licenses & Inspections, Bd. of License & Inspection Review v. Weber*, 147 A.2d 326, 328 (Pa. 1959) (emphasis added); *see also Beauty Hall, Inc. v. State Bd. of Cosmetology*, 210 A.2d 495 (Pa. 1965); *King v. Bureau of Prof'l & Occupational Affairs, State Bd. of Barber Exam'rs*, 195 A.3d 315 (Pa. Cmwlth. 2018); Appl. Ex. 1 (Notes of Testimony, Chairman Tammy O'Neill (Chairman O'Neill)) at 98 ("Q The point of this process is the protection of salon patrons, correct? [Chairman O'Neill] Correct."). Accordingly, Section 5(a) of the Law has a legitimate state objective.

---

[7] Act of June 19, 1931, P.L. 589, *as amended*, 63 P.S. §§ 551-567.

### b. Means to Attain State Objective

Next, we must determine whether the means the General Assembly established to attain the objective (i.e., the Requirement) bears a rational (i.e., real and substantial) relationship to the objective (i.e., protecting beauty shop patrons). *See Germantown Cab Co*.

Petitioners assert in the Petition:

126. The [Requirement] is facially unconstitutional under this clause because it lacks a real and substantial relationship to the protection of the public health, safety, or welfare, or to any other legitimate government interest. It thus violates the right of [Petitioners] and many others like them to pursue a limited cosmetology license free from arbitrary and irrational legislation.

127. The [Requirement] is also facially unconstitutional under this clause because it is unreasonable, unduly oppressive, and patently beyond the necessities of regulating cosmetology, or of any other legitimate government interest. It thus violates the right of [Petitioners] and many others like them to pursue their chosen occupation free from arbitrary and irrational legislation.

128. The [Requirement] fails on its face to satisfy any standard of constitutional review for substantive due process rights, no matter how articulated.

Petition at 24.

In *Gombach v. Department of State, Bureau of Commissions, Elections & Legislation*, 692 A.2d 1127 (Pa. Cmwlth. 1997), this Court explained:

Although good moral character was not defined by the General Assembly, . . . the phrase has been made constitutionally certain by our courts in terms of a person lacking 'moral turpitude.'[8]

---

[8] "A '[d]etermination of whether a crime involves moral turpitude turns on the elements of the crime, not on an independent examination of the details of the behavior underlying the crime.' *Startzel v. Department of Education*, . . . 562 A.2d 1005, 1007 ([Pa. Cmwlth.] 1989)." *Garner v.*

> Good moral character is defined, in part, as including 'an absence of proven conduct or acts which have been historically considered as manifestation of moral turpitude.' [Black's Law Dictionary] 693 (6th ed. 1990). Our courts have defined moral turpitude as 'anything done knowingly contrary to justice, honesty or good morals.' *Foose* [*v. State Bd. of Vehicle Mfrs., Dealers & Salespersons*, 578 A.2d 1355, 1357 (Pa.

*Bureau of Prof'l & Occupational Affairs, State Bd. of Optometry*, 97 A.3d 437, 440 (Pa. Cmwlth. 2014) (footnote omitted). In *Bowalick v. Dep't of Educ.*, 840 A.2d 519 (Pa. Cmwlth. 2004), this Court concluded: "Considering . . . the cases addressing moral turpitude in different statutory contexts, . . . a crime of moral turpitude requires a reprehensible state of mind or mens rea." *Id*. at 523-24.

The Board has declared, relative to the type of crimes for which Petitioners were convicted, that assault and thefts are crimes of moral turpitude, *see* Appl. Exs. 8, 14, 17, 20, while DUI, drug possession, and possession of drug paraphernalia are not crimes of moral turpitude. *See* Appl. Exs. 9, 17.

The Court acknowledges that Governor Wolf signed the Act of July 1, 2020, P.L. 545 (Act 53), which specifies how licensing boards and commissions under the Bureau of Professional and Occupational Affairs, including the Board, shall consider criminal convictions when determining whether an individual qualifies for a professional license. In particular, Section 3113 of Act 53 prohibits the Board from disqualifying license applicants based on criminal convictions without first determining whether the convictions relate directly to the subject occupation and whether licensing the individual would pose a substantial risk to his/her clients' health and safety or substantial risk of further criminal convictions. *See* 63 Pa.C.S. § 3113, effective in 180 days (i.e., December 28, 2020). Because the instant case involves a facial challenge, Act 53 does not expressly repeal the Requirement portion of Section 5(a) of the Law (such that the Requirement may still be a bar to applicants without criminal convictions), and the applicable portion of Act 53 is not currently effective, the enactment of Act 53 does not affect the Court's analysis or ruling herein.

In her Dissent, Judge McCullough states that "[t]he Board requests that we review the impact of Act 53 to assess whether the legislation has rendered Petitioners' constitutional claims moot." *Haveman v. Bureau of Prof'l & Occupational Affairs, State Bd. of Cosmetology* (Pa. Cmwlth. No. 765 M.D. 2018, filed August 25, 2020), slip op. at 2. However, the Board merely notified the Court of Act 53 "as a change in status of authorities." July 7, 2020 Letter; *see* Pa.R.A.P. 2501(b) (change in status of authorities). In its letter, the Board did not request the Court to review the impact of Act 53. Further, Judge McCullough does not cite any authority for the Court to conduct such a review since Act 53 is not effective until December 28, 2020. Because only the current statute is before the Court, any ruling on Act 53 before its effective date would be purely advisory. *See Borough of Marcus Hook v. Pa. Mun. Ret. Bd.*, 720 A.2d 803, 804 (Pa. Cmwlth. 1998) ("It is well established that a judicial determination that is unnecessary to decide an actual dispute constitutes an advisory opinion and has no legal effect.").

12

Cmwlth. 1990)] (quoting *Moretti* [*v. State Bd. of Pharmacy*, 277 A.2d 516, 518 (Pa. Cmwlth. 1971)]). From these definitions it is apparent that the two phrases, good moral character and moral turpitude, are often used together or to define each other.

*Id.* at 1130.

*Garner v. Bureau of Prof'l & Occupational Affairs, State Bd. of Optometry*, 97 A.3d 437, 440 (Pa. Cmwlth. 2014). "Based on *Foose* and *Moretti*, we hold that **good moral character has been sufficiently defined by judicial interpretation, custom and usage so as to survive constitutional challenge**. **If a person has committed an act of moral turpitude, it may be determined whether that person is of good moral character**." *Gombach*, 692 A.2d at 1131 (emphasis added; quotation marks omitted).

This Court "'must uphold [the Requirement] as rational if it can conceive of any plausible reason for [it].' *Nixon* [], 839 A.2d at 287-88 n.15." *Peake*, 132 A.3d at 518 n.15. The Board proffered in its brief:

It is important for a potential limited licensee, who will come into direct contact with a person's body, to be of good moral character. There is an inherent level of trust involved when a client of an esthetician, nail technologist or natural hair braider lets a stranger touch a part of [his/her] body. This trust is due to the knowledge of that client that the stranger touching [him/her] has been vetted by the licensing process and that the General Assembly fulfilled its duty of public protection when fashioning that process. The result is that a man or woman can be in a rather compromising position with an esthetician but feel a level of comfort knowing that the esthetician is of good moral character.

Board's Br. at 15. This Court agrees with the Board that, based on the statutory definitions of cosmetology and esthetics, that patrons seeking the services of a cosmetologist and/or esthetician place themselves in vulnerable situations. Under the

13

circumstances, there is a plausible reason for the Requirement.[9]  Thus, even if the Requirement "will have some inequitable results[,]" *Peake*, 132 A.3d at 518 n.15, it represents a real and substantial means to attain the state objective.

Because the Requirement bears a rational relationship to its objective of protecting beauty shop patrons, Petitioners have failed to state a viable claim that the Requirement, on its face, violates substantive due process.  Accordingly, Petitioners do not have a clear right to relief on their substantive due process claim.

## 2. Equal Protection

Section 1 of the Fourteenth Amendment to the U.S. Constitution provides, in relevant part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Article I, Section 26 of the Pennsylvania Constitution declares: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."  Pa.

---

[9] This Court acknowledges that Section 13(a) of the Law provides, in relevant part:

> The [B]oard shall have the power **to refuse**, revoke, refuse to renew or suspend **licenses**, upon due hearing, **on proof of violation of any provisions of this** [**Law**]**, or the rules and regulations established by the** [**B**]**oard under this** [**Law**]**, or for gross incompetency or dishonest or unethical practices**, or for failing to submit to an inspection of a licensee's salon during the business hours of the salon.

63 P.S. § 519(a) (emphasis added).  This Court has recognized that Section 13(a) of the Law does not reference criminal convictions and, thus, allows the Pennsylvania Department of Corrections to offer cosmetology training to eligible inmates.  *See Abruzzese v. Bureau of Prof'l & Occupational Affairs, State Bd. of Cosmetology*, 185 A.3d 446 (Pa. Cmwlth. 2018); *see also Bentley v. Bureau of Prof'l & Occupational Affairs, State Bd. of Cosmetology*, 179 A.3d 1196 (Pa. Cmwlth. 2018).  Section 9124 of the Criminal History Record Information Act, 18 Pa.C.S. § 9124, further authorizes the Board to refuse, revoke or not renew the license of a cosmetologist/esthetician based on the applicant/licensee's felony convictions or trade-related misdemeanors.  However, the fact that the Board has this additional authority at its disposal does not render the Requirement unconstitutional on its face.

14

Const. art. I, § 26. "Together, [Article I, Section 1 and Article I, Section 26 of the Pennsylvania Constitution] are understood to establish a right to equal protection of the laws equivalent to that established in the [U.S.] Constitution."[10] *Smires v. O'Shell*, 126 A.3d 383, 393 n.7 (Pa. Cmwlth. 2015). "Our Supreme Court has held that '[t]he Equal Protection Clause . . . does not obligate the government to treat all persons identically, but merely assures that all similarly situated persons are treated alike.'" *Garrison v. Dep't of Corr.*, 16 A.3d 560, 564 (Pa. Cmwlth. 2011) (quoting *Small v. Horn*, 722 A.2d 664, 672 (Pa. 1998)).

Petitioners assert in the Petition:

134. Applicants for limited cosmetology licenses are similarly situated to applicants for barber's licenses.

135. Applicants for limited cosmetology licenses are similarly situated to applicants for unlicensed jobs at spas and salons.

136. Requiring good character of applicants for limited cosmetology licenses but not of applicants for barber's licenses and unlicensed jobs at spas and salons facially violates equal protection because it bears no real and substantial relationship to the protection of the public health, safety, or welfare, or to any other legitimate government interest.

137. Requiring good character of applicants for limited cosmetology licenses but not of applicants for barber's licenses and unlicensed jobs at spas and salons facially violates equal protection because it is unreasonable, unduly oppressive, and patently beyond the necessities of regulating cosmetology, or of any other legitimate government interest.

138. Requiring good character of applicants for limited cosmetology licenses but not of applicants for barber's

---

[10] Accordingly, "[o]ur Supreme Court has held that the equal protection provisions of the Pennsylvania Constitution are analyzed under the same standards used by the [U.S.] Supreme Court when reviewing equal protections claims under the Fourteenth Amendment to the [U.S.] Constitution." *Muscarella v. Commonwealth*, 87 A.3d 966, 972 n.8 (Pa. Cmwlth. 2014).

licenses and unlicensed jobs at spas and salons facially violates equal protection because it bears no rational relationship to any legitimate government interest.

139. The [Requirement] fails on its face to satisfy any standard of constitutional review for equal protection, no matter how articulated.

Petition at 25-26.

Chairman O'Neill acknowledged that, although salon receptionists, cashiers, make-up technicians and shampooers work alongside licensed cosmetologists and estheticians in salons, often with the same patrons and with similar access to their belongings, those other salon employees are not subject to the Requirement. *See* Appl. Ex. 1 at 97-99. Moreover, the General Assembly did not subject barbers to the Requirement.

Despite that the Barber License Law's purpose "is [likewise] the protection of patrons of barber . . . shops[,]" *Weber*, 147 A.2d at 328; *see also King*, the Barber License Law

> does not [similarly] prohibit licensure based on a prior conviction of any kind, nor does it require that applicants demonstrate that they are of good moral character. [*See* Section 3 of the Barber License Law,] 63 P.S. § 553 . . . . Instead, the Barber License Law requires only that applicants be at least 16 years old, have at least an eighth-grade education, have a specified amount of training and experience, and pass the applicable examinations. [*See*] 63 P.S. § 553.

*King*, 195 A.3d at 326.

Section 2.1 of the Barber License Law[11] defines "barbering," in relevant part, as follows:

> To shave or trim the beard; to cut, shape, trim or blend the hair with the proper tools or instruments designed for this purpose; to **shape the eyebrows**, to give **facial** and scalp **massaging, facial** and scalp **treatment, with any**

---

[11] Added by Section 4 of the Act of June 30, 1984, P.L. 494.

**preparations made for this purpose, either by hand or by mechanical or electrical appliances**; to singe and shampoo the hair or apply any makes of hair cream, hair lotions or hair tonics; **to dye, color or bleach the hair** and to perform any service on a wig or hairpiece; to style and to render hair straightening, hair processing, hair weaving, hair waving and curling, with such methods as: manual, mechanical, chemical or electrical with the proper devices or proper chemical compounds developed and designed for this purpose.

63 P.S. § 552.1 (emphasis added).

Like estheticians, licensed barbers are permitted to shape/tweeze eyebrows, dye hair (including eyelashes and eyebrows), and give facial treatments and massages. *See* 63 P.S. § 507. Like cosmetologists, licensed barbers are permitted to clean, cut, color, process and remove hair, and massage the face and scalp. *See id.* Board administrator Kelly I. Diller (Diller) testified that there are salons in which both barbers and cosmetologists work. *See* Appl. Ex. 5 at 31. Yet, in its answer to the Petition, the Board acknowledged: "A barber practicing within his or her scope of practice by using tweezers to shape the eyebrows or a straight razor to shave or trim a beard is not required to be of good character." Answer to Petition ¶ 94.

Notably, Section 17 of the Law declares, in pertinent part: "Nothing in this [Law] is intended to be inconsistent with the [Barber License Law.]" 63 P.S. § 523. The Pennsylvania Supreme Court has further explained:

> The Barber License Law and the [Law] are in effect legislative [conjoined] twins. It is true they were born two years apart, but in the life of a commonwealth, and certainly in the life of the general welfare of a people, two years may be but a moment. The kinship between these two creatures of the Legislature was recognized in the [Law] by the language:
>
> 'Nothing in this [Law] is intended to be inconsistent with the [Barber License Law],' . . . 63 P.S. § 523.

17

> It is a cardinal rule of statutory construction that a statute must never be read, unless the text impels so extraordinary a reading, as to impart to it an absurd intent.

*Weber*, 147 A.2d at 328.

When Chairman O'Neill was asked "What about good character is relevant to the practice of cosmetology?," she responded: "Serving the public. It's a major part of their job, [] dealing with the public, serving the public, communicating with the public, as well as their overall success." Appl. Ex. 1 at 72. When asked: "Do you think that there's anything about cosmetology that offers specific risks of certain kinds of crime?," Chairman O'Neill responded: "No." Appl. Ex. 1 at 74-75.

However, despite that the Law was not intended to be inconsistent with the Barber License Law, 63 P.S. § 523, the long-standing conjoined twin kinship between the Barber License Law and the Law, *see Weber*, and the similarity in the services barbers and cosmetologists/estheticians are authorized to provide – sometimes in the same setting – the Requirement is imposed on cosmetologists/estheticians, but not barbers or other unlicensed salon employees. This Court agrees with Petitioners that it is absurd that, where "[e]ven if they have identical criminal records, even if they will perform similar services, even if they will stand one salon chair apart, the [L]aw requires good character of only the cosmetology applicants . . . and not the barber applicants . . . ." Petitioners' Br. at 19-20. Similarly situated licensed professionals and individuals in close contact with salon patrons and their belongings are not similarly restricted. Because there is no set of circumstances under which the Requirement would be valid in this context, the Requirement, on its face, violates the equal protection mandates of the Pennsylvania Constitution. *Germantown Cab Co.*

Accordingly, since Petitioners have made a viable claim that the Requirement, on its face, violates equal protection, they have a clear right to relief.

18

## B. Genuine Issues of Material Fact

The Board argues that there are outstanding issues of material fact that preclude this Court from granting judgment in Petitioners' favor. Specifically, the Board asserts that "[a] genuine issue of material fact also exists as to Petitioner[s'] assertion that the Board has a 'mission to ensure good salon experiences[,]' [Petitioners'] Br. [at] 9[,]" rather than to promote patron safety. Board's Br. at 9. The Board further claims that the absence of studies, interviews or testimony that good moral character protects salon patrons, raises a factual issue to be resolved at trial. *See* Board's Br. at 9. In addition, the Board contends that the details of other Board decisions included with Petitioners' Application raise factual issues related to whether there is no circumstance under which the Requirement would be valid. *See* Board's Br. at 7. The Board also maintains that "determining the ability of the Board to apply the provisions in a constitutional manner requires resolution of disputed facts." Board's Br. at 8. Further, the Board argues that Petitioners' declaration that applicants with the wrong criminal history cannot become cosmetologists is an outstanding factual issue, since the Board routinely grants licenses to applicants with criminal histories. *See* Board's Br. at 10. However, there is no factual dispute that the Requirement's purpose is patron protection. Moreover, because Petitioners assert a facial challenge, and these purported factual issues concern the constitutionality of the Requirement as applied, they are not material to this Court's decision.[12]

The Board further asserts that Petitioners' allegation that there is nothing unique about cosmetology to justify character reviews, and the differences between barbers and other salon employees as compared to cosmetologists must also be

---

[12] The record is clear that the Board approves the majority of cosmetology applications, but relies on the Requirement to scrutinize those with criminal histories and, even then, approves most of them. Notwithstanding, the Requirement's constitutionality does not turn on the number of applicants the Requirement affects. Rather, the question is whether the Requirement is rationally related to protecting salon patrons. These issues need not be presented to a factfinder for resolution.

resolved. *See* Board's Br. at 10. However, the Law specifies what services cosmetologists and estheticians are authorized to perform, and the Barber License Law details what services barbers may provide. Chairman O'Neill declared that there is nothing about cosmetology that offers specific risks of certain kinds of crime, and Diller detailed that there are other salon employees and barbers, and even prospective applicants, working in salons who are not subject to the Requirement. Therefore, these material facts are not in dispute.

Accordingly, there are no genuine issues of material fact that would preclude this Court from granting summary relief.

**Conclusion**

Based on the foregoing, because the Requirement, on its face, violates the equal protection mandates of the Pennsylvania Constitution, this Court grants Petitioners' Application.

_____
ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this case.

20

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Courtney Haveman and         :
Amanda Spillane,            :
              Petitioners    :
                            :
          v.               :
                            :
Bureau of Professional and     :
Occupational Affairs, State Board of   :
Cosmetology of the Commonwealth   :
of Pennsylvania,           :    No. 765 M.D. 2018
              Respondent   :

## O R D E R

AND NOW, this 25th day of August, 2020, the Application for Summary Relief filed by Courtney Haveman and Amanda Spillane is GRANTED. Section 5(a) of what is commonly referred to as the Beauty Culture Law, Act of May 3, 1933, P.L. 242, *as amended*, 63 P.S. § 511(a), is hereby declared unconstitutional and unenforceable, and the Bureau of Professional and Occupational Affairs, State Board of Cosmetology, is hereby enjoined from enforcing the good moral character requirement contained therein.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Courtney Haveman and : 
Amanda Spillane, : 
                        Petitioners : 
                     : 
             v. : No. 765 M.D. 2018
                     : Argued: June 11, 2020
Bureau of Professional and : 
Occupational Affairs, State : 
Board of Cosmetology of the : 
Commonwealth of Pennsylvania, : 
                    Respondent : 


BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE ELLEN CEISLER, Judge


**DISSENTING OPINION**
**BY JUDGE BROBSON**               **FILED: August 25, 2020**


Petitioners Courtney Haveman (Haveman) and Amanda Spillane (Spillane) (collectively, Petitioners) have criminal records. Because of those criminal records, Respondent Bureau of Professional and Occupational Affairs, State Board of Cosmetology (Board), denied Petitioners' applications for a limited license to practice esthetics under what is commonly referred to as the Beauty Culture Law or Cosmetology Law (Law).[1] Specifically, based on the convictions, *and only based*

---

[1] Act of May 3, 1933, P.L. 242, *as amended*, 63 P.S. §§ 507-527.

*on the convictions*,[2] the Board determined that Petitioners lacked the "good moral character" required for a limited license.[3]

Petitioners both had available administrative remedies to address the Board's separate decisions to decline their applications based on their criminal histories. Haveman, however, elected not to proceed with a hearing before the Board. The Board issued a final adjudication, denying her application on October 7, 2016. Spillane requested a hearing and received an adverse adjudication from the Board on November 4, 2015, but chose not to appeal the adjudication to this Court. Roughly two and three years later, respectively, Spillane and Haveman initiated this action in our original jurisdiction.

I agree with the Honorable Bonnie Brigance Leadbetter, who, in her dissenting opinion on December 9, 2019, would have sustained the preliminary objections of the Board to our exercise of original jurisdiction in this matter. *Haveman v. Bureau of Prof'l and Occupational Affairs, State Bd. of Cosmetology* (Pa. Cmwlth., No. 765 M.D. 2018, filed Dec. 9, 2019) (Leadbetter, S.J., dissenting). Petitioners actively participated in an administrative process that, had they seen through to fruition, would have allowed this Court to address their alleged facial

---

[2] (*See* Petition for Review ¶¶ 1, 2, 26-42, 68, 69.) Petitioners also purport to advance the interests of others whose applications the Board routinely denies "under the good[ ]character requirement . . . because of criminal convictions." (*Id.* ¶ 75; *see id.* ¶ 77.)

[3] Section 5(a) of the Law, 63 P.S. § 511(a).

constitutional challenge, as well as an as applied challenge,[4] perhaps even within the two or three years prior to initiating this original jurisdiction action.[5]

For this reason, I would deny Petitioners' Application for Summary Relief and dismiss this matter for lack of original jurisdiction.[6]

<br>

P. KEVIN BROBSON, Judge

---

[4] I believe that the claim in this action, while couched as a facial constitutional challenge, is, in reality, an as applied challenge to *how* the Board is applying the "good moral character" requirement to bar Spillane and Haveman from receiving licenses due to their respective criminal histories.

[5] In this regard, the administrative process did not pose too great of a burden on Petitioners. Petitioners cannot credibly argue that this Court should hear this matter as a "pre-enforcement review." *See Robinson Twp. v. Cmwlth.*, 83 A.3d 901, 990-91 (Pa. 2013) (noting defenses to original jurisdiction pre-enforcement action include concerns that "issues or facts . . . not adequately developed" and "whether [the] adversary will suffer any hardships if review is delayed"). Here, Petitioners, not the administrative process, delayed judicial review. The Board already enforced the statute against Petitioners, perhaps improperly so. Petitioners, however, abandoned the administrative process and their appeal remedies. While we have exercised our original jurisdiction in *pre*-enforcement reviews, I question the wisdom of using our original jurisdiction, rather than our appellate jurisdiction, in *post*-enforcement reviews of agency decisions. *See Pocono Manor Investors, LP v. Dep't of Envtl. Prot.*, 212 A.3d 112, 116 (Pa. Cmwlth. 2019) (en banc) ("[E]xhaustion is not a necessary prerequisite to obtaining judicial review if '[the challenged law] itself causes actual, present harm' *prior to its enforcement*." (emphasis added) (quoting *Concerned Citizens of Chestnuthill Twp. v. Dep't of Envtl. Res.*, 632 A.2d 1, 3 (Pa. Cmwlth. 1993), *appeal denied*, 642 A.2d 488 (Pa. 1994))).

[6] Alternatively, in light of the passage of the Act of July 1, 2020, P.L. 575, No. 53 (Act 53), I would invite the parties to brief the issue of mootness before ruling on Petitioners' Application. On July 17, 2020, the Board submitted a letter to the Court, pursuant to Pa. R.A.P. 2501, advising the Court of the passage of Act 53 and in which the Board, *inter alia*, contends that the passage of Act 53 "materially affects the authoritative status" of Section 5(a) of the Law.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Courtney Haveman and Amanda : 
Spillane, : 
                    Petitioners :   No.  765 M.D. 2018
           v. : 
           :   Argued:  June 11, 2020
Bureau of Professional and : 
Occupational Affairs, State Board of : 
Cosmetology of the Commonwealth : 
of Pennsylvania, : 
                  Respondent : 


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge



DISSENTING OPINION
BY JUDGE McCULLOUGH                  FILED:  August 25, 2020


          Here, the Bureau of Professional and Occupational Affairs, State Board of Cosmetology of the Commonwealth of Pennsylvania (Board) denied the applications of Courtney Haveman and Amanda Spillane (Petitioners) for licensure as estheticians on the basis that they did not satisfy the "good moral character" requirement of section 5(a) of the statute known as the Beauty Culture Law,[1] 63 P.S. §511(a). Thereafter, Petitioners did not petition this Court for review. Instead, Petitioners filed the instant action in our original jurisdiction as a petition for review

---

[1] Act of May 3, 1933, P.L. 242, *as amended*, 63 P.S. §§507-527.

in the nature of declaratory and injunctive relief, seeking an order decreeing that the "good moral character" requirement is unconstitutional on its face.

While I agree that there are significant constitutional issues that would be applicable here, I believe we must first address the issue of mootness for failure to exhaust administrative remedies, a procedure which, if pursued through its natural course, could have provided Petitioners with an adequate remedy.

Although petitioners need not avail themselves of or even exhaust administrative remedies when they lodge a facial constitutional challenge to a statutory provision, *see East Coast Vapor, LLC v. Pennsylvania Department of Revenue*, 189 A.3d 504, 511 (Pa. Cmwlth. 2018) (en banc), Petitioners here decided to apply for licensure and elected to pursue the administrative process with and through the Board. Yet, along with that administrative channel and procedure came an automatic right to file a petition for review with this Court. *See Pittman v. Pennsylvania Board of Probation and Parole*, 159 A.3d 466, 474 (Pa. 2017). In *Lehman v. Pennsylvania State Police*, 839 A.2d 265 (Pa. 2003), our Supreme Court explained that petitioners' "facial challenges to a statute's constitutionality need not be raised before the administrative tribunal to be reviewed by an appellate court." *Id.* at 275. In so deciding, our Supreme Court confirmed that this Court could have entertained Petitioners' constitutional claims on direct appeal from the Board.

However, Petitioners chose to not file a petition for review with this Court from the Board's order denying their applications. During the pendency of this appeal, on July 17, 2020, the Board filed a submission with this Court, contending that the enactment of the Act of July 1, 2020, P.L. 575, No. 53 (Act 53), severely altered its authority to implement the "good moral character" requirement of section 5(a), namely the manner in which it may or can take into consideration past criminal convictions when deciding to grant licensure. The Board requests that

PAM - 2

we review the impact of Act 53 to assess whether the legislation has rendered Petitioners' constitutional claims moot. Because I believe the parties must first address the effect that this Act may have on section 5(a), *see Department of Environmental Resources v. Jubelirer*, 614 A.2d 204, 211-212 (Pa. 1992), I must respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Courtney Haveman and Amanda : 
Spillane, : 
                Petitioners : 
            : 
      v. : No. 765 M.D. 2018
           : ARGUED: June 11, 2020
Bureau of Professional and : 
Occupational Affairs, State Board of : 
Cosmetology of the Commonwealth : 
of Pennsylvania, : 
                Respondent : 

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge

CONCURRING AND DISSENTING OPINION
BY JUDGE CEISLER                FILED: August 25, 2020

I agree with the outcome of this case and the majority's determination that rational basis review applies to this matter, pursuant to our Supreme Court's holding in *Germantown Cab Co. v. Philadelphia Parking Authority*, 206 A.3d 1030, 1041 (Pa. 2019). I also concur fully in the majority's well-reasoned conclusion that the "good moral character" requirement of Section 5(a) of the statute known as the Beauty Culture Law,[1] 63 P.S. § 511(a) (Section 5(a)), violates the equal protection provisions of both the United States and Pennsylvania Constitutions. Additionally, I agree with the majority's determination that there are no genuine issues of material fact to be resolved.

---

[1] Act of May 3, 1933, P.L. 242, *as amended*, 63 P.S. §§ 507-527.

I respectfully dissent, however, from that portion of the majority's opinion concluding that Section 5(a) does not facially violate the substantive due process rights of Courtney Haveman and Amanda Spillane (Petitioners) pursuant to the Fourteenth Amendment of the United States Constitution, U.S. CONST. amend XIV, § 1 ("[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law"), and Article I, Section 1 of the Pennsylvania Constitution, PA. CONST. art. I, § 1[2] ("[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness"). In my view, Section 5(a)'s requirement that applicants for limited cosmetology licenses be of "good moral character" violates substantive due process requirements and is facially unconstitutional for this additional reason.

## I. Background

Petitioners are two women who want to become estheticians, which are cosmetologists who focus on skincare. This requires only a limited license rather than a full cosmetology license, but the State Board of Cosmetology (Board) applies the "good moral character" requirement equally to both types of licenses. 63 P.S. § 511(a). Petitioners have criminal records from when they were younger and struggling with substance abuse, but they have turned their lives around. Both have been clean/sober and successful for years. Both graduated from beauty school and received job offers from salons. Ms. Spillane even went through a humiliating hearing before the Board to prove she is a good person. Under the good character requirement, however, the Board rejected both Petitioners' license applications, even

---

[2] *See Germantown Cab Co. v. Phila. Parking Auth.*, 206 A.3d 1030, 1042-43 (Pa. 2019) (citing PA. CONST. art. I, § 1 as a source of substantive due process rights).

EC - 2

though Petitioners' criminal histories have nothing to do with cosmetology. Pursuant to the good character requirement, the Board routinely scrutinizes applicants because of irrelevant criminal convictions. Then, for an applicant whose application is initially denied and who agrees to undergo a hearing to continue pursuing licensure, the hearing process is grueling. Applicants are required to reveal intensely personal and painful experiences to the Board. Moreover, the process of considering the applicant's character can easily take a year, while the applicant is waiting and unable to practice her chosen career.

## II. Due Process and the "Good Moral Character" Requirement

Article I, Section 1 of the Pennsylvania Constitution guarantees "an individual's right to engage in any of the common occupations of life." PA. CONST. art. I, § 1; *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 20 (Pa. Cmwlth. 2012) (*en banc*). "[T]he legislature can curtail the right to engage in a chosen occupation for an important reason, but it may not do so in a way that is overly broad." *Peake v. Commonwealth*, 132 A.3d 506, 519 (Pa. Cmwlth. 2015) (*en banc*). "'Under the guise of protecting the public interests *the legislature may not* arbitrarily interfere with private business or *impose unusual and unnecessary restrictions upon lawful occupations*.'" *Id.* (quoting *Gambone v. Commonwealth*, 101 A.2d 634, 637 (Pa. 1954)) (emphasis in *Peake*).

Petitioners contend the statutory "good moral character" requirement deprives them of their chosen occupations and thereby violates their substantive due process rights. The sole purpose of Pennsylvania's cosmetology laws is to protect patrons of beauty salons. *Dep't of Licenses & Inspections, Bd. of License & Inspection Review v. Weber*, 147 A.2d 326, 328 (Pa. 1959). As Petitioners correctly point out,

Section 5(a)'s good character requirement facially lacks a "real and substantial relation" to that purpose. *Peake*, 132 A.3d at 519.

Good character has nothing to do with protecting beauty salon patrons. Indeed, the Board admits that it has no evidence that the good character requirement protects salon customers. *See* Appl. for Summary Relief, Ex. 7 (Board could not identify evidence that the requirement serves a purpose). In fact, the Board already has separate authority to withhold licenses for misbehavior that is related to cosmetology.

Moreover, the good character requirement is unconstitutionally imprecise and arbitrary. "The touchstone of due process is protection of the individual against arbitrary action of the government." *Peake*, 132 A.3d at 518 (quoting *Nixon v. Commonwealth*, 839 A.2d 277, 287 (Pa. 2003)); *see also Johnson*, 59 A.3d at 20 ("The substantive protections of due process are meant to protect citizens from arbitrary and irrational actions of the government."). By definition, arbitrary laws do not advance state interests.

The Board argues Petitioners cannot sustain a facial challenge because they cannot show the statute is invalid in all circumstances. The Board posits that its decisions granting licenses to some applicants with criminal records demonstrate that the statute is constitutional as applied in those cases. However, the Board's uneven application of its prejudice against former criminals is not relevant to whether the statute is facially unconstitutional.

The Board also argues that good moral character may be important to eligibility for professional licenses. The Board points to this Court's approval of such a requirement for notaries and asserts it has applied the "good moral character" standard of Section 5(a) similarly. Again, this is not relevant to whether that

standard is constitutionally permissible for estheticians.  Moreover, the standard's importance for notaries is self-evident; the same is not true for cosmetologists.

Rational basis review "require[s] an individual challenging legislation to show either that the legislation does not further a legitimate state interest[] or that the legislation is not rationally related to this legitimate state interest."  *Germantown Cab Co.*, 206 A.3d at 1044 (citing *Washington v. Glucksburg*, 521 U.S. 702, 728 (1997), and *Romer v. Evans*, 517 U.S. 620, 635 (1996)).  "In addition, Pennsylvania balances the rights of the individual against the public interest."  *Germantown Cab Co.*, 206 A.3d at 1044-45.

Here, there is facially no rational relation between the "good moral character" requirement of Section 5(a) and the legislature's asserted interest in public health and safety.  Further, Petitioners persuasively argue that their individual rights outweigh any indeterminate public interest.  In this regard, it is notable that the Board simply asserts that the "good moral character" requirement of Section 5(a) bears a rational relation to the public interest because the legislature is presumed to make decisions based on the public interest.  This circular argument does not support the Board's contention that the public interest outweighs that of Petitioners for purposes of rational basis review.

Finally, the Board contends good moral character is important because clients must be able to trust their estheticians, as estheticians are in physical contact with clients. The Board asserts, with absolutely no supporting evidence, that clients may find themselves "in a rather compromising position" with an esthetician (although apparently not with a barber using a straight razor) and need the comfort of knowing the person touching them is of good moral character.  This bald assertion is simply without record support.  Thus, the Board has failed to point to any specific set of

circumstances in which Section 5(a) would bear a rational relation to the legislative purpose of protecting beauty salon patrons.[3]

For these reasons, I conclude that Section 5(a) facially violates constitutional rights of substantive due process, as well as equal protection rights, under rational basis review. I would grant Petitioners' requested relief on this additional basis. Therefore, I respectfully dissent from that portion of the majority's decision concluding that Section 5(a) does not facially violate Petitioners' substantive due process rights.

_____
ELLEN CEISLER, Judge

---

[3] Significantly, the legislature recently amended statutory licensing requirements to eliminate the consideration of a cosmetology license applicant's criminal history in determining good moral character. Specifically, under Section 3113(a) and (a.1) of the Act of July 1, 2020, P.L. 53 (Act 53), licensing boards can no longer determine "good moral character" of cosmetology license applicants in conjunction with criminal convictions. *See* 63 Pa. C.S. § 3113(a) & (a.1). Instead, the legislature has provided detailed analytical guidelines under which the relevant licensing board must first determine whether the applicant's prior criminal conviction is directly related to the ability to perform the licensed activity. That direct relation is to be determined objectively by whether the criminal statute at issue is included in a statutory list (which is yet to be developed). 63 Pa. C.S. § 3113(b)(1). If the criminal conviction is not directly related to the occupation at issue, the licensing board will proceed to determine whether the requested licensure would pose a substantial risk to the applicant's patients or clients. 63 Pa. C.S. § 3113(b)(2).

Act 53 also provides a mechanism by which a prospective license applicant can obtain a preliminary opinion from a licensing board, in order to determine the board's position on the applicant's prior criminal conviction and its likely effect on licensure, before the applicant expends time and money in seeking training in the prospective occupation. 63 Pa. C.S. § 3115. The inability to obtain such advance information was a consideration asserted by Petitioners here.