**Mickey MILES, Appellant**

v.

**John WISER, individually, and in his respective official capacity employee of the Pennsylvania Department of Corrections at Somerset, T.S. Rago, individually, and in his respective official capacity employee of the Pennsylvania Department of Corrections.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 26, 2003.

Decided April 21, 2004.

Mickey Miles, appellant, pro se.

Marsha Mills Davis, Camp Hill, for appellees.

BEFORE: FRIEDMAN, Judge, and COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN.[1]

Mickey Miles (Miles), an inmate at Laurel Highlands (SCI–Laurel Highlands), ap-

---

1. This opinion was reassigned to the author on February 3, 2004.

peals from the order of the Court of Common Pleas of Somerset County that both denied him *in forma pauperis* status and dismissed his civil action, which was in the nature of a Section 1983 civil rights complaint. The action arose from what Miles alleged was the discriminatory conduct of several Department of Corrections employees toward him, which had the effect of violating his civil rights. Specifically, Miles claimed that he was discriminated against on the basis of his prison job assignments and by being subjected to racist remarks. The trial court dismissed the civil action, finding that the allegations in Miles's complaint: (1) involved issues of internal management, supervision and operation of the prison and (2) did not justify the trial court's intrusion into the administration of the prison. This appeal followed.[2]

A recitation of the allegations in Miles's complaint, which we must accept as true upon appeal, *Mercurio v. Allegheny County Redevelopment Authority*, 839 A.2d 1196, 1201 n. 5 (Pa.Cmwlth.2003), is necessary. Miles is an inmate at SCI–Laurel Highlands. He alleges that on February 21, 2003, Corrections Officer T.S. Rago assigned him to clean up trash in the dayroom and to clean the staff bathrooms. When Miles asked why he was assigned two jobs, Rago replied, "I'm short of help." (Complaint, ¶ 1.);

Miles next alleges that on February 28, 2003, he was the only block worker working as a wheelchair escort on his shift and Rago assigned him to clean both the hallways and the staff bathrooms. When Miles asked Rago why he assigned Miles these two jobs, in addition to the wheelchair escort job, Rago said that Miles was the only inmate who could do the cleaning because the other block workers were limited to light-duty work. Miles performed the work, but told Rago that he, too, was limited to light duty.[3] Later, Miles confronted Rago about the work assignments. He alleges that, as a result, Rago "now calls him BuB that is to say Bubble! A derogatory racist name especially to someone of another ethnicity, knowingly [sic] that his name is Miles." (¶ 1 of Complaint.)

Thereafter, Miles filed a grievance (Grievance 1), relating to his work assignments, in which he asserted that he was assigned two jobs (block worker and wheelchair escort) and that he was given fewer block worker hours than others resulting in his receiving less pay.[4] On March 10, 2003, John Wiser, unit manager, issued a decision denying Grievance 1. In so doing, Wiser concluded that Miles was not being singled out for additional work assignments and that Rago divided the daily workload "as equally as possible." (Complaint, ex. B.) Wiser also found that Miles was usually the first worker released to return to his housing unit each day.

2. While the trial court did not cite to the authority upon which it premised its dismissal action, it is clear to this Court that it did so under Section 6602(e) of the Prison Litigation Reform Act, 42 Pa.C.S. § 6602(e). This is because only that provision provides for *sua sponte* dismissal of a complaint, not just for a frivolous filing as is also authorized under Pa. R.C.P. No. 240(j), but also for a failure to a state a cause of action. The authority to dismiss in this fashion, however, is limited to a situation where *in forma pauperis* status is sought, as it was here.

3. His medical clearance form, dated December 30, 2002, states, "No lifting over 50 lbs," (Complaint, ex. E.), although Miles does not allege that cleaning the hallways and bathrooms would have violated the fifty-pound lifting restriction.

4. We note that on March 7, 2003, he obtained a new medical clearance form specifically stating that he was restricted to light-duty work. (Complaint, ¶ 3, ex. C.)

(Complaint, ¶ 5, ex. B.) Miles appealed the grievance decision. On April 14, 2003, the Chief Grievance Coordinator completed a final review of Grievance 1 and issued a decision denying it. The decision stated that the assignment of tasks to Miles did not appear to be an excessive amount of labor and that the tasks fell within the guidelines for jobs performed by General Labor Pool workers. The decision also stated that, because Miles was usually one of the first workers released to return to his housing unit, it seemed that he had time to perform the additional tasks. (Complaint, ¶ 8, ex. G.)

While his Grievance 1 was pending on appeal, Miles, on March 15, 2003, refused to sign his pay sheet because it indicated that he had worked only four hours and because other block workers performing the same duties were receiving pay for six to eight hours of work. Miles alleges that when he spoke to Wiser, Wiser attempted to intimidate Miles by engaging in "menacing and erratic behavior," (Complaint, ¶ 2.); however, he does not provide any examples of what this phrase means. That same day, Miles filed another grievance (Grievance 2), alleging that block workers who were "not wheelchair escorts were receiving more hours," that Rago and Wiser conspired "to give me only the hours I work regardless of the jobs accordingly [sic] to DOC policy," and that Wiser "cannot be impartial concerning this racist and discriminatory practice." (Complaint, ex. B.)

Miles further alleged that on March 17, 2003, Rago and Wiser "further harassed Miles by having him summoned to medical for clarification of his medical clearance form," (allegedly in retaliation for filing Grievance 2). (Complaint, ¶ 4.) Afterwards, Miles received a new medical clearance form indicating that he was not to do mopping and could not sweep or dust for longer than thirty minutes. (Complaint, ex. D.)

On March 20, 2003, Rago asked Miles if he still was limited to light-duty work, and Miles handed Rago the latest medical clearance form. Rago ordered Miles back to his housing unit, stating, "I have two light duty workers.... I do not need you." (Complaint, ex. F.)

On April 13, 2003, Rago asked Miles to sign his pay sheet, which showed that Miles had worked only four hours. When Miles asked why he was to be paid for only four hours, Rago informed him that it was because he was working light duty. (Complaint, ¶ 7.) On May 21, 2003, Miles asked Wiser why he was not paid the same as other inmates and, in an allegedly belligerent manner, Wiser told him, "work the same hours as they work." (Complaint, ¶ 10.)

Thereafter, Miles filed the civil action at issue here against Rago and Wiser seeking compensatory and punitive damages and declaratory and injunctive relief. He also filed an application to proceed *in forma pauperis*. The trial court dismissed the complaint, *sua sponte*, concluding that it was frivolous and that it failed to state a claim upon which relief could be granted. It also denied Miles's application to proceed *in forma pauperis*. Miles now appeals to this Court, arguing that the trial court erred in denying him *in forma pauperis* status and in dismissing his complaint as frivolous and for failure to state a cause of action.[5]

---

**5.** Our scope of review of the trial court's order in *sua sponte* dismissing the complaint is plenary because the trial court dismissed the complaint for failure to state a cause of action upon which relief may be granted. *Owens v. Shannon*, 808 A.2d 607, 609 n. 5 (Pa.Cmwlth.2002).

Miles's complaint, which alleges civil rights violations, is brought under 42 U.S.C. § 1983. That statute provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To state a claim under Section 1983, a plaintiff must (1) allege a violation of rights secured by the United States Constitution and the laws of the United States and (2) show that the alleged deprivation was committed by a person acting under the color of state law. *Owens v. Shannon*, 808 A.2d 607, 609 n. 6 (Pa.Cmwlth.2002).

A careful reading of the complaint, however, discloses that Miles has not alleged actions that give rise to a constitutional violation. The majority of the complaint describes, in rambling fashion, Miles's work assignments and whether he should be placed on light duty. His sole allegation of racial "discrimination" in the complaint is the earlier-quoted statement about him being called "BuB." Exhibit B to the complaint contains only the allegations that (1) block workers who were not wheelchair escorts were receiving more hours, (2) Rago and Wiser conspired to give him only the limited hours he worked and (3) Wiser could not be impartial "concerning this racist and discriminatory practice." Miles does not, in the complaint, set out what actions constitute a "racist and discriminatory practice," or aver that Rago or Wiser took any action against him (concerning job assignments or otherwise) because of his race. Instead,

he alleges: 1) that he, a wheelchair escort, was given a lesser number of hours to work than those who were not wheelchair escorts, and 2) that he was not paid for working more hours than he actually worked, *i.e.*, he was paid only for the hours he actually worked. There is no racial discrimination explicit or implicit here. Instead, the complaint and exhibits demonstrate, at most, that there may have been a personality clash between Miles and the officers.

Miles also alleges that Rago and Wiser retaliated against him for filing a grievance alleging racial discrimination by harassing him about his medical clearance for prison employment. However, it was only *after* Miles informed Rago that he was limited to light-duty work, that Rago and Wiser had Miles return to the medical staff "to obtain clarification of his medical clearance form" in order to determine whether he was, in fact, on light-duty status as he claimed. Once he saw medical personnel, his clearance was limited to prohibit him from mopping and to impose a time limitation on sweeping and dusting activities. There is no averment that these further medical restrictions were not honored, once issued, or were issued improperly.

As noted earlier, under Section 6602(e) of the Prison Litigation Reform Act, 42 Pa.C.S. § 6602(e), a court is *required* to dismiss prison conditions litigation that it deems are frivolous or that fail to state a cause of action in a situation where, as here, *in forma pauperis* status is sought. The trial court, in doing so, relied upon the notion that prison job assignments are within the Department of Corrections' managerial prerogative. This was a correct application of the law since an inmate's interest in keeping a prison job does not amount to a property right. *Bryan v. Werner*, 516 F.2d 233, 240 (3rd.

Cir.1975). Therefore, because Miles had no property right in his prison job or in being employed for any particular number of hours, and because he has not averred that Rago or Wiser took any action that could arguably give rise to a cause of action for a constitutional violation based on his race, the trial court did not err in denying *in forma pauperis* status and dismissing the complaint.

## ORDER

NOW, April 21, 2004, the order of the Court of Common Pleas of Somerset County in the above-captioned matter is hereby affirmed.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that the Court of Common Pleas of Somerset County (trial court) properly dismissed *sua sponte* the civil action filed by Mickey Miles (Miles) against the above-named defendants, concluding that Miles' "complaint and exhibits demonstrate, at most, that there may have been a personality clash between Miles and the [corrections] officers." (Majority op. at 6.) For the reasons that follow, I disagree.

The trial court dismissed Miles' complaint under section 6602(e) of the Prison Litigation Reform Act, 42 Pa.C.S. § 6602(e), which allows a court to dismiss prison conditions litigation if the court determines that the complaint fails to state a claim upon which relief may be granted. In making this determination, the court must accept as true all well-pled allegations of material fact and all reasonable inferences deducible from the allegations. *Sweatt v. Department of Corrections,* 769 A.2d 574 (Pa.Cmwlth.2001). The court should dismiss the complaint only in cases

that are free and clear from doubt and only where it appears with certainty that the law permits no recovery under the allegations pled. *Id.*

### I. Racial Discrimination

Miles makes the following allegations in his complaint and exhibits. On more than one occasion in February 2003, a corrections officer named T.S. Rago (Rago) assigned Miles extra work cleaning bathrooms, hallways and the dayroom while other block-workers did only one job and were not required to do any cleaning. When Miles complained to Rago about this situation, Rago called Miles a derogatory racist name. Miles filed a grievance relating to his work assignments, stating that he senses hatred and feels aggression from Rago. When Miles learned that, in addition to giving him additional and undesirable work assignments, the corrections officers were giving him fewer hours and less pay than other block-workers who performed the same work, Miles filed a grievance alleging racial discrimination.[1] (Complaint, ¶¶ 1, 3, ex. A, B.)

I reasonably infer from these allegations that, in assigning work and in authorizing payment for work, the corrections officers are discriminating against Miles based on his race. Because of his race, the corrections officers are giving Miles multiple jobs, including the unwanted cleaning jobs, while other block-workers do only one non-cleaning job. Because of his race, the corrections officers are giving Miles fewer hours, and less money, than other block-workers who perform the same work. Moreover, because of his race, the corrections officers are using racial epithets in addressing him and are expressing hatred and aggression towards him.

The United States Supreme Court has held that the Equal Protection Clause of

---

**1.** It is not possible to determine Miles' race from the complaint.

the Fourteenth Amendment to the U.S. Constitution protects prisoners from invidious racial discrimination. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In order to state an equal protection claim for unequal or discriminatory treatment, a person must allege that he has not been treated the same as similarly situated persons and that the disparate treatment is based on an unjustifiable standard, such as race. *Correll v. Department of Transportation, Bureau of Driver Licensing,* 726 A.2d 427 (Pa. Cmwlth.1999), *aff'd,* 564 Pa. 470, 769 A.2d 442 (2001). Based on Miles' allegations of disparate treatment based on his race, I would conclude that Miles has stated a proper equal protection claim.[2]

## II. Retaliation

Miles alleges that, in retaliation for filing a grievance alleging racial discrimination, the corrections officers have harassed Miles about his medical clearance for prison employment. (Complaint, ¶¶ 4, 6, ex. D, F.)

In *Brown v. Blaine,* 833 A.2d 1166 (Pa. Cmwlth.2003), this court stated that a prisoner's claim of retaliation for his use of the inmate grievance system implicates conduct protected by the First Amendment to the U.S. Constitution.[3] Because Miles has alleged that employees of the Commonwealth, acting in their official capacities, have deprived him of a right secured by the U.S. Constitution, Miles has properly stated a cause of action for retaliation.

Accordingly, I would reverse and remand.

2. Miles brings his claim under Section 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege a violation of rights secured by the U.S. Constitution and the laws of the United States and (2) show that the alleged deprivation was committed by a person acting under the color of state law. *Owens v. Shannon,* 808 A.2d 607 (Pa.Cmwlth. 2002).

3. The First Amendment to the U.S. Constitution states that Congress shall make no law abridging the freedom of speech or respecting the right of the people to petition the Government for a redress of grievances.