**Mr. Charles GARRISON, Petitioner**

v.

**DEPT. OF CORRECTIONS & Secretary of Correction Jeffrey Beard, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 5, 2010.

Decided March 18, 2011.

Charles Garrison, pro se.

Travis S. Anderson, Assistant Counsel, Camp Hill, for respondents.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and BUTLER, Judge.

OPINION BY Judge BROBSON.

Petitioner Charles Garrison (Garrison) filed in this Court's original jurisdiction a petition for a writ of mandamus (petition) through which he seeks an order directing Respondent Department of Corrections (DOC)[1] to permit him to participate in a DOC program in which inmates can be trained to be barbers. DOC filed preliminary objections to Garrison's petition, which we now sustain.

We perceive the averments in Garrison's petition to allege the following facts. Garrison is an inmate who was confined at the State Correctional Institution (SCI) at Fayette (Fayette).[2] Officials at Fayette would not permit Garrison to (1) participate in a barber program, (2) work in Fayette as a student barber, and (3) obtain a barber license from Fayette's barber school. Garrison asserts that DOC then transferred him to SCI–Greene (Greene) to allow him to obtain a barber license, but that officials at Greene would not permit him to participate in the barber education program there because he had a conviction for a sexual offense.[3] Garrison contends that DOC engaged in improper conduct in denying his application to participate in one of DOC's barber programs because DOC has permitted some inmates with sex offense records who had been in prison longer to participate in the program. Garrison states that "[n]ew [inmates] couldn't [participate] because [of a] change in [the] Secretary of Corrections."[4]

Based upon these primary averments, Garrison raises various legal challenges. Specifically, Garrison argues that: (1) DOC's rules prohibiting inmates with sex offense convictions from participating in barber programs violate "civil procedure and rights;" (2) the application of DOC's rules in a "retrospective" manner violates "all fairness within [the] system of equal

1. We shall refer to Respondents Department of Corrections and its former Secretary, Jeffrey Beard, collectively as DOC.

2. DOC indicates in its memorandum in support of its preliminary objections that Garrison is now confined at SCI–Frackville.

3. Garrison avers that "Fayette [transferred him] to Greene[, which denied his request to participate in the program] because of his record. When at first Fayette had school they did [deny him] and when [the] school close[d] up, they sen[t] him to Greene to cover[ ]up for these errors." We cannot discern from the

averments in the petition what Garrison means by "cover up." (Petition at 1, unnumbered paragraph (3).)

4. Garrison also alleges that "[t]he actual relationship between staff and inmates does as far as who you are[.] See some get into program[s] and some don't. I was take to [Greene] two years ago for [a] program[.] I got into a disagreement with [a] doctor and return[ed] without gaining that license when [dis]agreement had nothing to do with discussions … about … [the] program." (Petition at 3, numbered paragraph (3).)

rights;" (3) DOC's application of its rule to Garrison violates due process and increases his punishment because his sex offense conviction is "old after 'seven years;' " and (4) the absence of a "law" banning persons with sex offense convictions from participation in barber programs "is a civil and constitutional violation." Garrison also raises an equal protection claim against DOC based upon its refusal, in accordance with DOC's classification of Garrison as a sexual offender, to permit him to participate in a barber program. Within his equal protection claim, Garrison also suggests that DOC's application of its rule results in an increase in his punishment.

■■■■ DOC's preliminary objections include a demurrer to Garrison's claims, contending that he has failed to state a cause of action for mandamus under (1) the applicable regulation, (2) equal protection, and (3) due process.[5] Mandamus is an extraordinary remedy available only to compel the performance of a ministerial act or mandatory duty on the part of a governmental body. *Barndt v. Dep't of Corr.*, 902 A.2d 589, 592 (Pa.Cmwlth.2006).

■■ In considering whether Garrison has sufficiently pleaded a cause of action seeking relief in the nature of mandamus, we begin with DOC's argument that Garrison is not entitled to relief in the nature of mandamus because he has failed to state a claim under the applicable DOC policy. DOC refers us to its Administrative Directive 807 (DC–ADM 807), which relates to "Inmate Grooming and Barber/Cosmetology Programs," and provides as follows:

D. Barber/Cosmetology Vocational Programs

The Barber/Cosmetology Instruction Program is a vocational opportunity extended to selected inmates on a discretionary basis by the Department.

1. Enrollment Guidelines

a. Enrollment in the . . . Program is neither a right nor an earned privilege. Inmates are not entitled to participate by virtue of technical compliance with program guidelines. Factors to be considered are[:] published guidelines, public safety, security, efficient operation, and availability of facility resources.

2. Criteria for Participation

a. The inmate must have 12 to 36 months to serve until the expiration of his/her minimum sentence.

. . .

m. Since enrollment is neither a right nor an earned privilege, each inmate shall be considered on an individual basis by designated staff. *The Department has determined that inmates serving life sentences or having sexual offense convictions may not be enrolled in the barber or cosmetology program.*

(Emphasis added.)

DOC asserts that Garrison is serving a five-to-ten year sentence and that his minimum term will not expire until September 2012. DOC, referring to Garrison's pleading, contends that Garrison applied for the

---

5. In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we may draw from the averments. *Meier v. Maleski*, 167 Pa. Cmwlth. 458, 648 A.2d 595 (1994). The Court, however, is not bound by legal conclusions encompassed in the petition for review, unwarranted inferences from facts, argumentative allegations, or expressions of opinion.

*Id.* We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on his claim, and we must resolve any doubt in favor of the petitioner. *Id.* We review preliminary objections in the nature of a demurrer under these guidelines and may sustain a demurrer only when a petitioner has failed to state a claim for which relief may be granted. *Clark v. Beard*, 918 A.2d 155 (Pa.Cmwlth.2007).

program at least two years before filing this petition, and, thus, the pleading indicates that Garrison filed his application more than thirty-six months before the expiration of his minimum sentence. DOC also has attached a copy of a grievance Garrison filed in August 2009, in which he sought to challenge DOC's refusal to admit him to the barber program. DOC argues that Garrison sought admittance to the program more than thirty-six months in advance of his minimum sentence date, which, under DC–ADM 807(VI)(D)(2)(i)(1), is too early for DOC to consider applications to participate in the program.

Garrison does not dispute DOC's assertion regarding the timing of his application. Garrison also does not claim that he was not convicted of a sexual offense. Based upon these factors, we conclude that DOC did not err in its application of its policy and that Garrison has not established a right to relief under the terms of the policy. Further, DC–ADM 807 makes clear that DOC's decisions related to admission to the program are purely discretionary. In such circumstances, mandamus is not an appropriate avenue for relief.[6]

■ Garrison has also asserted a claim that DOC's policy and its application to Garrison results in a violation of his equal protection rights. Our Supreme Court has held that "[t]he Equal Protection Clause ... does not obligate the government to treat all persons identically, but merely assures that all similarly situated persons are treated alike." *Small v. Horn*, 554 Pa. 600, 615, 722 A.2d 664, 672 (1998). The nature of the governmental action at issue in an equal protection claim determines the nature of the analysis courts must

employ. *Harper v. State Emp. Ret. Sys.*, 538 Pa. 520, 649 A.2d 643 (1994). When the challenged governmental action neither burdens a fundamental or important right nor creates a suspect or quasi-suspect classification, courts apply the so-called rational basis test, and will affirm the governmental action as long as the action is rationally related to a legitimate governmental interest. *Small*, 554 Pa. at 615, 722 A.2d at 672.

Although Garrison suggests that the Court should apply a higher level of scrutiny, we can discern no aspect of his claim that would support a conclusion that DOC's policy burdens a fundamental or important right. We also cannot conclude that the policy has created a suspect or quasi-suspect classification. Consequently, we apply the rational basis test in considering whether Garrison's claim can withstand DOC's demurrer.

■ The first consideration in applying the rational basis test is whether the policy represents an attempt to promote any legitimate state interest. *Com. ex rel. Buehl v. Price*, 705 A.2d 933, 936 (Pa. Cmwlth.1997), *appeal denied*, 556 Pa. 696, 727 A.2d 1123 (1998). If so, the Court must consider whether the policy is reasonably related to accomplishing the goals of those legitimate interests. *Id.* With regard to the initial question of whether the state has articulated a legitimate state interest in its classification, we begin by noting the overarching legitimate state interest in the regulation of prisoners. In the single-judge decision this Court issued in *Department of Public Welfare v. Kallinger*, 134 Pa.Cmwlth. 415, 580 A.2d 887 (1990), *appeal dismissed*, 532 Pa. 292, 615 A.2d 730 (1992), the Court, citing *Bell v.*

---

**6.** Although a party may be entitled to mandamus if he alleges and proves that an official or agency has elected not to exercise discretionary power, *Chester Community Charter School v. Department of Education*, 996 A.2d 68, 75 (Pa.Cmwlth.2010), in this case, Garrison simply challenges the manner in which DOC has exercised its discretion.

*Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), observed that "[t]he Commonwealth has an overwhelming interest in maintaining prison security, order and discipline. The Supreme Court has stated that 'maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of . . . convicted prisoners.' " *Kallinger,* 580 A.2d at 890.

Although DOC's regulation itself does not articulate a specific purpose behind DOC's decision to exclude sex offenders from participation in its vocational cosmetology program, we may apply the above-noted legitimate goals of prison authorities in reviewing DOC's decision to exclude from the program inmates who have committed sexual offenses. The Commonwealth's recognized interest in maintaining institutional security applies in our equal protection analysis to the cosmetology policy at issue here.

■ The next inquiry in a rational basis analysis is whether the state's policy is reasonably calculated to achieve the goals of the state's legitimate interests. In addressing this issue we note that, when courts review this question, the governmental entity defending its policy need not produce evidence in support of its expressed rationale. *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). A governmental agency may advance through argument a reason for its policy, and courts may rely upon that expression in analyzing the issue. *Heller,* 509 U.S. at 320, 113 S.Ct. 2637 (stating that rational speculation without evidence is sufficient to satisfy government's explanation for classification subject to rational basis review).

In this case, DOC asserts that "[d]enying admission to inmates with a history of aggressive or assaultive conduct serves the compelling interest of inmate safety and institutional security, because barbershop students are given razors and scissors and are expected to use them on the heads, faces, and necks of fellow inmates." (DOC memorandum at 13.) This single reason alone is sufficient to support DOC's policy. Therefore, we sustain DOC's preliminary objection to Garrison's claim arising under equal protection.[7]

■ DOC also argues that Garrison has failed to plead facts that would support

---

7. We also note that as part of his equal protection claim, Garrison contends that DOC's application of its policy results in an increase of his punishment. This contention actually appears to invoke the Ex Post Facto Clause rather than Equal Protection Clause, but we conclude that even if Garrison had clearly raised this as an independent basis for his requested relief, he would not be entitled to such relief. Although laws relating to incarceration may violate the Ex Post Facto Clause, "[t]he controlling inquiry in determining if an ex post facto violation has occurred is whether retroactive application of the change in the law 'creates a significant risk of prolonging . . . incarceration.' " *Cimaszewski v. Pa. Bd. of Probation and Parole,* 582 Pa. 27, 45, 868 A.2d 416, 426 (2005). Further, in *Evans v. Pennsylvania Board of Probation and Parole,* 820 A.2d 904 (Pa.Cmwlth.2003), *ap-* *peal denied,* 580 Pa. 550, 862 A.2d 583 (2004), we observed that a statute is not penal in nature unless the legislature (1) intended for the law to be used for punishment, (2) the purpose of the law is objectively punitive, or (3) the law operates in such a harsh manner that it constitutes punishment. *Evans,* 820 A.2d at 912. DOC's cosmetology policy in no way increases Garrison's sentence. The policy is not aimed at providing corrections authorities with any means of punishing an inmate, nor is the policy intended to enable the authorities to increase an inmate's initial sentence. The application of the policy in this case did not affect Garrison's initial minimum or maximum sentences. Consequently, we conclude that Garrison has failed to plead a cause of action under the Ex Post Facto Clause.

his various claims that appear to invoke due process. As DOC notes, a prisoner has no property interest in a particular job program DOC may offer to inmates. *Miles v. Wiser*, 847 A.2d 237, 240 (Pa. Cmwlth.2004). The Court has repeatedly alerted inmates to the legal doctrine that, unless a protected liberty or property interest is at issue, no procedural due process attaches. *Wilder v. Dep't of Corr.*, 673 A.2d 30, 32 (Pa.Cmwlth.), *appeal denied*, 545 Pa. 673, 681 A.2d 1344 (1996). We agree with DOC that Garrison has not pleaded any facts that suggest he has a property interest in the cosmetology program. Accordingly, we sustain DOC's preliminary objection to all of Garrison's claims that he asserts arise under notions of due process.

Based upon the foregoing, we conclude that Garrison has failed to state a cause of action upon which we could grant relief, and, consequently, we sustain DOC's preliminary objections, and dismiss Garrison's petition.

### ORDER

AND NOW, this 18th day of March, 2011, the preliminary objections filed by the Department of Corrections are SUSTAINED and the Petitioner's petition is DISMISSED.