# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Luke Bussoletti, : 
                   Petitioner : 
                        : 
      v. : No. 1230 C.D. 2019
                        : Submitted: March 6, 2020
Department of Human Services, : 
                  Respondent : 

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**              **FILED:  November 5, 2020**

Luke Bussoletti (Recipient), by and through his parents and legal guardians, petitions for review of a final administrative action order of the Department of Human Services (DHS), Bureau of Hearings and Appeals (BHA), dated July 30, 2019, issued by its Chief Administrative Law Judge (Chief ALJ).  The final administrative action order affirmed an adjudication and order, dated July 29, 2019, issued by an Administrative Law Judge (ALJ), which dismissed Recipient's appeal of a determination of the Office of Developmental Programs (ODP), through Greene County Human Services (GCHS), regarding Recipient's transportation to Pathways of Southwestern Pennsylvania's (Pathways) Adult Training Facility (ATF).  For the reasons set forth below, we affirm DHS's final administrative action order.

# I. BACKGROUND

Recipient is a 37-year-old male with severe intellectual disabilities. Recipient lives with his parents in Greene County, Pennsylvania. The family home is located on a gravel road that is three miles from the paved roadway. Since 2005, Recipient receives Medical Assistance (MA) and Home and Community-Based Services (HCBS) under the Consolidated Waiver (Waiver) program.

The Waiver program is authorized by Section 1915(c) of the Social Security Act, 42 U.S.C. § 1396n(c). It permits states to develop programs to support persons with intellectual disabilities, who otherwise would be eligible for and placed in an intermediate care facility, to receive services in their home and community and avoid institutionalization. (Certified Record (C.R.) at 292; *see* 42 U.S.C. § 1396n(c).) The United States Department of Health and Human Services, Centers for Medicare and Medicaid Services, oversees states' implementation of this program. (*Id.*; *see* 42 U.S.C. § 1396n(c).) ODP administers the Waiver program for DHS. For individuals residing in Greene County, GCHS is responsible for authorizing all services and supports that are funded under the Waiver program. Recipient's services, pursuant to his Individual Support Plan (ISP), include transportation services to the ATF. To better place this case into context, and because DHS's recent decision is based in part on the doctrine of collateral estoppel, we will review the events that preceded Recipient's most recent appeal.

## A. Recipient's First Appeal

Recipient's ISP supports services at the ATF for five days per week. Prior to March 2011, Pathways provided Recipient with door-to-door transportation services from his home to the ATF. During a meeting that occurred between Recipient's family and Pathways on March 8, 2011, Pathways informed the family that it was

discontinuing Recipient's door-to-door transportation services effective March 21, 2011. Pathways offered to continue to transport Recipient if his parents could meet its driver at a location approximately five miles from the family home, but his parents did not agree to that modification. On March 11, 2011, the Department of Public Welfare,[1] through GCHS, issued a written notice to Recipient informing him of Pathways' discontinuance of door-to-door transportation services due to financial reasons. Recipient appealed the decision. ALJ Karen C. Lewis held a hearing on the matter in May 2011.[2]

The GCHS Assistant Director of the Intellectual and Developmental Disabilities Department (Assistant Director) testified that Pathways, due to wear and tear on its vehicles, the loss of its four-wheel drive vehicle, and the inefficiency of using its large passenger van for Recipient's services, would no longer transport Recipient from his home to the ATF. (C.R. at 22.) The Assistant Director testified that Recipient could choose another provider, such as "Green[e] Arc," which provides transportation to the other adult training facilities in Greene County, or Recipient's parents could take him to the ATF and they would receive mileage reimbursement. (*Id.*) The Assistant Director testified that "they no longer have contracts with providers[,] and . . . a provider can become 'unwilling' at any time; there is no sanction imposed upon an unwilling provider." (C.R. at 23.)

---

[1] The General Assembly renamed the Department of Public Welfare to the Department of Human Services in September 2014. *See* Section 103 of the Human Services Code, Act of June 13, 1967, P.L. 31, *as amended*, added by the Act of September 24, 2014, P.L. 2458, 62 P.S. § 103 (effective November 24, 2014). We will refer to the agency as DHS throughout this opinion.

[2] Neither the certified record nor the reproduced record includes a copy of the May 24, 2011 hearing transcript. For purposes of background information, we are relying on ALJ Lewis's summary of the testimony contained within the June 13, 2011 adjudication.

The Assistant Director testified that the "Medical Assistance Transportation Program (MATP) does not provide transportation to adult training facilities." (*Id.*)

Recipient's father testified that at least $22,000 was budgeted in his son's ISP for transportation to the ATF. (*Id.*) Recipient's father testified that he sought to review Pathways' financial analysis on transportation costs, but the analysis was never provided to him. (*Id.*) Recipient's father testified that prior to March 2011, he and his wife met the Pathways' vehicle on "bad weather" days or when Pathways did not have an appropriate vehicle to come to his house. (*Id.*) Recipient's father indicated that, subsequent to the notice that Pathways would no longer provide door-to-door transportation for Recipient, Pathways proposed an alternate pick-up location in a letter, dated March 14, 2011. (*Id.*) Recipient had never before met the Pathways van at the proposed location, and Recipient's father did not feel this was a safe place for his son to get on and off the van. (*Id.*) Recipient's father contended that there really is no other provider in Greene County, because Greene Arc does not have a permanent location, is farther away from Recipient's home, and it was not Recipient's family's chosen provider for the services. (*Id.*) Recipient's father called Pathways' behavior a "professional violation" and questioned the legality of the proposed transportation arrangement. (*Id.* at 23-24.) Finally, Recipient's father testified that Pathways is not an unwilling provider of door-to-door service for everyone; they are only unwilling to drive more than twenty miles for Recipient.

ALJ Lewis, in her adjudication and order dated June 13, 2011, denied the appeal, in part, and sustained the appeal, in part. In so doing, she stated:

> [Recipient] receives services under the . . . Waiver[,] . . . [and] a Waiver recipient has the right to choose a <u>willing and able</u> provider. A Waiver provider is not required to provide services to an individual. [Recipient's] provider for transportation services, to and from his day program was [Pathways]. [Pathways] was providing door-to-door transportation services. Although [Pathways] did not attend the hearing

4

on this matter, it is clear from the testimony of [Recipient's] representatives and GCHS['s witness] that [Pathways'] decision to stop door-to-door services was based upon financial reasons. This decision was not a violation of the regulations.

. . . .

The written notice of service reduction was issued March 11, 2011. [Recipient's] representatives filed an appeal five days later, on March 16, 2011. As such, services should have continued during the pendency of the appeal. They did not. [Pathways] discontinued [Recipient's] door-to-door transportation services on March 21, 2011[,] and GCHS failed to compel [it] to continue services until this issue was adjudicated. However, the undersigned can provide no remedy. It is not possible to go back and provide door-to-door transportation services for days which have passed. GCHS['s witness] testified credibly that [Recipient's] parents are being reimbursed for days they transport [Recipient] to and from the [ATF]. [Recipient's] parents did not dispute this. . . .

(C.R. at 26 (emphasis in original).) BHA affirmed ALJ Lewis's adjudication and order on June 14, 2011. Recipient sought reconsideration, which the Secretary of DHS granted. By final order dated March 14, 2012, the Secretary of DHS ultimately upheld BHA's order, affirming ALJ Lewis's adjudication and order.

Recipient then filed a petition for review in our appellate jurisdiction. Recipient raised the following issues in the appeal: (1) whether Pathways' proposal to modify transportation services violated regulations relating to medical assistance; (2) whether DHS failed to follow all relevant procedures during the appeal process; (3) whether DHS violated Recipient's due process and equal protection rights; and (4) whether DHS and Pathways solicited his participation in an "illicit scheme" and abandoned Recipient by supporting the termination of his transportation services. *Bussoletti v. Dep't of Pub. Welfare*, 59 A.3d 682, 686 (Pa. Cmwlth. 2012) (*Bussoletti I*), *appeal denied*, 91 A.3d 1240 (Pa. 2013).

In reviewing Recipient's claims that DHS's and Pathways' changes to Recipient's transportation services violated regulations, we concluded that, when

5

Pathways chose and informed Recipient of its intent to end door-to-door transportation services, Pathways became an unwilling provider, and Recipient does not have the right to obtain services from an unwilling provider.[3] *Id.* Similarly, we concluded that DHS could not compel an unwilling provider to provide services, as there was no binding contract or sanction available to compel a provider to continue services. *Id.* We reasoned:

> [T]he issue is whether the regulations require Pathways to continue providing door-to-door transportation service and preclude any modification or reduction of service. . . . We are aware of no regulation requiring an unwilling provider to continue offering a service or precluding the modification, reduction or cessation of service. Based on the clear regulatory language, we agree with [ALJ Lewis] that Pathways did not violate the regulations by its decision to discontinue door-to-door transportation service and its proposal to offer modified service.

*Id.* at 687. We further concluded that "questions regarding the compensation Pathways may or may not receive for proposed modified services is not the issue in this appeal." *Id.*

We next addressed Recipient's claims that ALJ Lewis: (1) failed to settle the issue or issues raised by Recipient in requesting a hearing and failed to produce a clear and definitive decision setting forth the finding that DHS acted in accordance with 55 Pa. Code § 275.1(b)(2);[4] (2) failed to determine the appropriate regulations

---

[3] Our review included reviewing "Federal regulations requir[ing] a State plan to provide that a beneficiary may obtain Medicaid services from any provider '(i) Qualified to furnish the services; and (ii) *Willing to furnish them to that particular beneficiary.*'" *Bussoletti I*, 59 A.3d at 686 (quoting 42 C.F.R. § 431.51(b)(1)) (emphasis in original).

[4] Section 275.1(b)(2) of DHS's regulation, 55 Pa. Code § 275.1(b)(2), provides, in relevant part: "(b) *Objectives of appeals and fair hearings.* The objectives of appeals and fair hearing[s] will be . . . (2) [t]o settle the issue or issues raised by the client in requesting a hearing and to produce a clear and definitive decision setting forth the findings of [DHS]."

6

that apply in accordance with 55 Pa. Code § 275.4(h)(1)(iii);[5] and (3) failed to render a decision based upon the facts and evidence as applied to DHS regulations in accordance with 55 Pa. Code § 275.4(f)(6).[6] *Id.* After reviewing the aforementioned regulations, we concluded that ALJ Lewis rendered her decision in accordance with the regulations, that she conducted a fair hearing and gathered the facts necessary to render a decision, and that she "properly determined that Pathways should have continued transportation services during the pendency of the appeal." *Id.* at 688.

---

[5] Section 275.4(h)(1)(iii) of DHS's regulations, 55 Pa. Code § 275.4(h)(1)(iii), provides:

(h) *Hearing Decisions.* Hearing decisions will conform with the following:

> (1) *Hearing authority.* Hearing authority will conform with the following:
>
> > . . . .
> >
> > (iii) The Office of Hearings and Appeals is under the direct supervision of the Secretary or his designee. The function of the hearing officer in rendering a hearing decision will be as follows:
> >
> > > (A) To determine the facts.
> > >
> > > (B) To determine the appropriate regulations that apply.
> > >
> > > (C) To determine the action that should be taken in relation to the established facts and correct application of Departmental regulations.

[6] Section 275.4(f)(6) of DHS's regulation, 55 Pa. Code § 275.4(f)(6), provides:

(f) *Conducting the hearing.* The hearing will be held before a hearing officer. The hearing officer will be a qualified agency official who has not been involved in any way with the decision or action in question or with the person or officer who is responsible for the decision or action up to the time of the hearing. The responsibilities of the hearing officer in conducting the hearing are as follows:

> . . . .
>
> (6) To render a decision based upon the facts and evidence as applied to Departmental regulations.

7

Recipient next argued that DHS violated his procedural due process rights. *Id.* "Due process requires a person be provided notice and an opportunity to be heard prior to an adjudication affecting that person's rights." *Id.* (citing *Manor v. Dep't of Pub. Welfare*, 796 A.2d 1020 (Pa. Cmwlth. 2002)). "[DHS's] regulations afford every person receiving medical assistance the right to appeal from a [DHS] action and to have a hearing." *Id.* (citing 55 Pa. Code § 275.1(a)(2)).[7] "An appellant has the right to appear in person at the hearing and present evidence on his own behalf." *Id.* (citing 55 Pa. Code § 275.3(a)).[8] We concluded that DHS provided Recipient with notice and an opportunity to be heard on the relevant issues and that ALJ Lewis afforded him the right to a fair and impartial hearing on relevant matters when his "father testified, presented evidence, and cross-examined GCHS['s] witnesses." *Id.* at 689.

---

[7] Section 275.1(a)(2) of DHS's regulation, 55 Pa. Code § 275.1(a)(2), provides, in relevant part:

(a) *Right to appeal and have a fair hearing*. The policy with regard to the right to appeal and have a fair hearing will be as follows:

. . . .

(2) The regulations contained in this chapter, in accordance with the law, afford every person applying for or receiving a money payment, medical assistance, food stamps or services the right to appeal from a Departmental action or failure to act and to have a hearing if he is dissatisfied with a decision refusing or discontinuing assistance in whole or in part.

[8] Section 275.3(a)(1) of DHS's regulation, 55 Pa. Code § 275.3(a)(1), provides, in relevant part:

(a) *Rights of the appellant*. An appellant has the right to appear in person at the hearing and he may represent himself, or he may be represented . . . . The appellant or his representative, if any, have the following rights:

(1) To present evidence on his own behalf, to bring witnesses or documents he deems necessary, and to confront and cross-examine witnesses the county office, administering agency or social service provider will produce to support its decision or action. . . .

8

Recipient then argued that DHS violated his equal protection rights by "point[ing] to a perceived structural inequity within DHS's regulations regarding appeal procedures for medical assistance providers versus recipients." *Id*. "The essence of an equal protection claim is that persons in similar circumstances must be treated similarly." *Id*. (citing *Burns v. Pub. Sch. Emps.' Ret. Bd*., 853 A.2d 1146, 1152 (Pa. Cmwlth. 2004)). The crux of Recipient's argument was that for provider appeals, DHS conducts a *de novo* review of the factual and legal issues that are timely raised and preserved, while for recipient appeals, DHS is required "[t]o settle the issue or issues raised by the client in requesting a hearing and to produce a clear and definitive decision setting forth the finding." *Id*. (citing 55 Pa. Code § 41.191 and 55 Pa. Code § 275.1(b)(2)). In dismissing this argument, we noted that Recipient did not assert how he was treated differently from similarly situated persons; that Recipient and providers are not similarly situated; and that, "[a]lthough the regulations differ[,] . . . ALJ [Lewis] settled all factual and legal issues properly before her," such that "this argument lacks merit" *Id*.

We then addressed Recipient's argument that DHS and Pathways have solicited his participation in an "illicit scheme" by requiring Recipient's family to provide part of the transportation service and allowing Pathways to profit from the service. *Id*. We stated that, "[c]ontrary to his assertions, Recipient does not have to agree with Pathways' proposal." *Id*. We noted that Recipient could choose another provider from which to receive the services he is entitled under the Waiver, such as Greene Arc, or Recipient's parents could transport him to and from the ATF and be reimbursed per mile for doing so. *Id*. We similarly dismissed Recipient's assertion that DHS and Pathways abandoned him, again noting that DHS has "provided options for the continuation of these services under the Waiver . . . [and] [DHS] has

9

not abandoned Recipient." *Id.* We concluded our decision, stating "[a]lthough we empathize with Recipient and his parents and recognize their frustration over the limited choices available for Recipient's ISP services in Greene County, we discern no error. Based on the foregoing, we affirm." *Id.* at 689-90.

## B. Recipient's Second Appeal

In July 2016, Recipient filed an appeal regarding GCHS's continued inability to find a provider of door-to-door transportation services to the ATF. DHS, however, had not issued a notice of approval or denial to Recipient regarding his transportation to the ATF. Nevertheless, BHA docketed the appeal and assigned the case to ALJ Andrew Druzisky.

At the hearing on the matter in July 2016,[9] the GCHS Program Director (Program Director) testified about Recipient's previous adjudication and the circumstances of the case in 2011. The Program Director testified that Pathways only transports participants in zone one (or within 0-20 miles of the ATF) and that Recipient does not live in zone one. (C.R. at 34.) The Program Director testified about GCHS's efforts to locate a transportation provider in and around Greene County for Recipient; specifically, GCHS contacted: (1) First Student, (2) First Transit, (3) Freedom Transit, (4) Kings Transit, and (5) Greene County Transportation (GCT), but none were both willing and qualified. (*Id.* at 33.) GCHS also attempted to find individuals to provide transportation to Recipient, but none were willing or qualified. (*Id.* at 34.) The Program Director testified that GCT was not a Waiver service provider, but Recipient could pay for its services out-of-pocket if he chose to do so. (*Id.*) The Program Director also testified that GCT could

---

[9] Neither the certified record nor the reproduced record includes a copy of the July 13, 2016 hearing transcript. For purposes of background information, we are relying on ALJ Druzisky's summary of the testimony contained within the August 3, 2016 adjudication.

10

become a Waiver service provider, but the GCHS Transportation Manager would be responsible for that decision. (*Id.*)

Recipient's father testified extensively about DHS's previous adjudication and our decision in *Bussoletti I*. (*Id.*) Recipient's father testified that he believed that DHS retaliated against his son and failed to meet its responsibilities. (*Id.*) Recipient's father testified that he did not want to meet Pathways at a location other than his house and felt that Pathways was trying to commit fraud. (*Id.*) Recipient's father testified that GCT could be found to be a provider and provide transportation to Recipient. (*Id.*) Recipient's father testified he did not want to use Greene Arc as a provider because he did not feel it was reputable. (*Id.*) Furthermore, he was not aware of a willing and qualified provider, and it was not his job to find a willing and qualified provider. (*Id.*) Recipient's mother testified that they have disputed each of Recipient's ISPs since 2011 and continue to request transportation services from GCHS so that he can attend the ATF five days per week. (*Id.*)

By adjudication and order, dated August 3, 2016, ALJ Druzisky denied Recipient's appeal. ALJ Druzisky noted GCHS's efforts and failures to provide a replacement provider to Pathways that is both willing and qualified. ALJ Druzisky also noted that, in *Bussoletti I*, we determined that Recipient did not have the right to obtain services from an unwilling provider. ALJ Druzisky found that "GCHS has attempted to locate a transportation provider for [Recipient] but has been unable to do so due to the rural nature of [Recipient's] home and the condition of the road [on which] he lives." (C.R. at 42.) In response to Recipient's parents' argument that GCHS was retaliating against him because his parents did not agree to meet the Pathways' van at a location on a paved road, ALJ Druzisky determined that Recipient's "parents were not able to identify a provider who was willing and

11

qualified to support their claim [that] GCHS was retaliating against them by not approving a provider" and that "GCHS cannot force a provider to provide service." (*Id*.) ALJ Druzisky addressed Recipient's remaining claims as follows:

> [Recipient's] father raised the issue regarding GCT and [its] failure to be a qualified provider (GCHS administers GCT). [Recipient] was informed he could use GCT but since [it was] willing but not qualified he would be required to pay full fare. [Recipient's] father did not believe it was correct for [Recipient] to be charged for any service. This transportation service was an option for [Recipient] if he chose to pursue it and not a requirement. Since GCT is not qualified [it] could not be paid for transportation under the [Waiver]. [Recipient] also raised the issue that transportation can be provided by a non-qualified provider in some cases. The [Waiver] requires all providers to be willing and qualified except for public transportation. Neither [Recipient] nor his parents expressed any interest in [Recipient] using public transportation.

(*Id*.) By final order dated August 4, 2016, BHA affirmed ALJ Druzisky's adjudication and order. Thereafter, the DHS Secretary denied Recipient's motion for reconsideration. Recipient filed a petition for review with this Court, which we dismissed as untimely. *Bussoletti v. Dep't of Human Servs.*, 179 A.3d 1212 (Pa. Cmwlth. 2017) (*Bussoletti II*), *appeal denied*, 191 A.3d 1287 (Pa. 2018).

## C. Recipient's Third Appeal

At Recipient's annual ISP meeting held on April 9, 2019, DHS informed Recipient: (1) it was continuing its attempt to find a willing and qualified provider to provide door-to-door transport to the ATF; (2) it was overcoming barriers in its attempt to obtain public transportation to transport Recipient to the ATF; and (3) Recipient's parents would continue to be reimbursed mileage to transport him to the ATF five days per week. Recipient's parents signed the ISP form indicating they disagreed with the discussion and its content.

12

Recipient then requested GCHS to provide a denial notice regarding the denial of door-to-door transportation to the ATF that resulted from the April 9, 2019 ISP meeting. GCHS sent Recipient a letter, stating it could not send a denial notice, as it had not denied transportation services to Recipient. Nevertheless, GCHS provided Recipient with a fair hearing request form. In May 2019, Recipient filed an appeal, regarding DHS's alleged denial of transportation to the ATF. BHA docketed the appeal and assigned the case to ALJ Lisa Reno.

At the hearing on the matter in July 2019, GCHS's Intellectual Disabilities Director (ID Director) testified that Recipient has received Waiver services since approximately 2005. (C.R. at 338.) Recipient attends a "day program" at the ATF, and he is eligible for transportation to the facility under the Waiver program. (*Id.* at 338-39.) The ID Director testified that the Waiver program allows for three forms of transportation: (1) Transportation Trip (Door-to-Door); (2) Public Transportation; or (3) Mileage Reimbursement. (*Id.* at 339.) The ID Director explained that Pathways previously provided Recipient door-to-door transportation service to the ATF but became unwilling to provide door-to-door services. (*Id.* at 340.) Pathways now only transports participants in zone one (0-20 miles), and Recipient does not live in zone one. (*Id.* at 342-44.)

The ID Director testified that GCHS continues to attempt to find a door-to-door transportation service for Recipient. (*Id.* at 360-61.) Recipient's parents are eligible for mileage reimbursement to drive him to the ATF five days per week, but he only attends two days per week. (*Id.* at 337.) The ID Director testified that there was no change made to Recipient's transportation eligibility at the April 9, 2019 ISP meeting; that GCHS did not find Recipient ineligible for transportation services; and that, because there was no denial of transportation,

13

GCHS did not issue a denial notice to Recipient as a result of the meeting. (*Id.* at 335, 337-38.)

Recipient's father then testified extensively about the previous adjudications and our decision in *Bussoletti I*. (*Id.* at 377-81.) Recipient's father testified that he believed that DHS retaliated against his son, that DHS participated in fraudulent activities, and that DHS lied to him. (*Id.* at 378-79.) Recipient's father testified and provided exhibits as to GCHS's attempts to find a willing and qualified provider for his son's door-to-door services. (*Id.* at 387-88.) Recipient's father testified, however, that GCHS does not tell providers to offer the door-to-door service even though it has the power to do so, and GCHS chose not to use that power. (*Id.* at 381-82.) Recipient's father testified that they are involuntarily driving their son to the ATF due to DHS's failure to provide door-to-door transportation. (*Id.* at 401.) Furthermore, because he works, Recipient's father cannot take his son there five days per week. (*Id.*)

ALJ Reno, in her adjudication and order dated July 29, 2019, dismissed the appeal and summarized her decision, as follows:

> [A]s a result of the April 9, 2019 ISP meeting, [Recipient] continues to be authorized for Community Participation Supports at [the ATF] five days per week. [GCHS] has continued [its] approval of transportation services in the mode of Transportation-(Mile) for five days per week and therefore has not denied transportation services to [Recipient]. [Recipient] is not denied the "service" of [his] choice as he is still eligible for transportation, but rather the mode/form in which that service is provided. Additionally, in the [W]aiver it addresses Free Choice of Provider and states—a participant may select any willing and qualified provider to furnish [W]aiver services. In this case it is undisputed that [GCHS] has continued [its] attempt[] to locate a willing and qualified provider. Per the doctrine of collateral estoppel . . . [Recipient] and [Recipient's] parents are collaterally estopped from further litigating the issue of [GCHS's] inability to locate a willing provider for door-to-door transportation. [GCHS] is encouraged to continue [its] attempts to locate a willing and qualified provider. Since

14

> [Recipient] is eligible for Transportation five days per week in the form of mileage reimbursement, [GCHS] is not denying [Recipient's] full range of services and frequency of attendance to [the ATF].
>
> Accordingly, based on the Findings of Facts and the regulations, the undersigned concludes the appeal of [Recipient] is dismissed . . . .

(C.R. at 302.) BHA affirmed ALJ Reno's adjudication and order, and this appeal followed.

## II. ISSUES

Recipient presents five issues on appeal.[10] First, Recipient asserts that ALJ Reno misinterpreted 42 C.F.R. § 431.51, regarding the choice of provider. Second, Recipient contends that ALJ Reno erred in failing to consider the relevant contractual obligations and that all previous rulings in this case rely upon false testimony that no contract existed. Third, Recipient argues ALJ Reno erred in asserting that DHS can, by denying access to all alternate forms of Waiver eligible transportation, force families of Waiver participants to involuntarily provide transportation. Fourth, Recipient argues that ALJ Reno erred in concluding that collateral estoppel applied to the issue of DHS's ability to require a provider to provide door-to-door transportation services to Recipient. Finally, Recipient claims that ALJ Reno erred in not recognizing that DHS violated Recipient's equal protection rights, as guaranteed by the Fourteenth Amendment to the United States Constitution.

DHS argues that the doctrine of collateral estoppel bars Recipient's claims that it must require a provider to provide him with door-to-door transportation. DHS also contends that it properly dismissed Recipient's appeal because it did not

---

[10] Our review of DHS's final order is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether necessary findings of fact are supported by substantial evidence. *Bussoletti I*, 59 A.3d at 686 n.2.

15

deny him transportation services. Given that the application of the doctrine of collateral estoppel affects the issues we can review in this case, we begin with an examination of the existing law.

## III.  DISCUSSION

### A.  Collateral Estoppel

Collateral estoppel is based on the policy that "'a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.'" *Plaxton v. Lycoming Cty. Zoning Hearing Bd.*, 986 A.2d 199, 208 (Pa. Cmwlth. 2009) (quoting *McGill v. Southwark Realty Co.*, 828 A.2d 430, 434 (Pa. Cmwlth. 2003)). Collateral estoppel will generally foreclose re-litigation of issues of law or fact in a subsequent action where the following criteria are met:

> [(]1) the issue decided in the prior case is identical to the one presented in the later case; [(]2) there was a final judgment on the merits; [(]3) the party against whom the doctrine is asserted was a party or in privity with a party in the prior case and had a full and fair opportunity to litigate the issue; and [(]4) the determination of the prior proceeding was essential to the judgment.

*Pucci v. Workers' Comp. Appeal Bd. (Woodville State Hosp.)*, 707 A.2d 646, 648 (Pa. Cmwlth. 1998). The doctrine of collateral estoppel "reduces the costs of multiple lawsuits, facilitates judicial consistency, conserves judicial resources, and 'encourage[s] reliance on adjudication.'" *Rue v. K-Mart Corp.*, 691 A.2d 498, 500 (Pa. Super. 1997) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

With this in mind, we begin by reviewing whether the issue in Recipient's 2011 and 2016 administrative appeals are the same as the issue in his 2019 administrative appeal. The issue, as framed by ALJ Lewis in the 2011 appeal, concerned "[w]hether [DHS] correctly modified [Recipient's]

16

services, provided under the [Waiver], by discontinuing door-to-door transportation services to [the ATF] effective March 21, 2011." (C.R. at 21.) In 2016, ALJ Druzisky framed the issue as "[w]hether [DHS] correctly denied [Recipient] door-to-door transportation services to [the ATF] provided by an entity other than [Recipient's] parents." (C.R. at 33.) We note that ALJ Druzisky, in the 2016 appeal, specifically concluded that the issue before him was different from the issue in the 2011 appeal as it concerned "the discontinuance of transportation services provided by Pathways . . . [while] [t]he issue in this[—*i.e.*, the 2016 appeal—] is [DHS's] failure to find a willing and qualified provider of transportation services." (C.R. at 41.) ALJ Reno, in the 2019 appeal, framed the issue as "[w]hether [DHS] was correct to deny transportation services, and therefore the full range of services and frequency of attendance at [the ATF], as a result of the April 9, 2019 ISP meeting." (C.R. at 287.) In all three appeals the central issue is whether Recipient was entitled to door-to-door transportation to the ATF. Accordingly, we agree with ALJ Reno that DHS met this first factor for collateral estoppel to apply.

Concerning the remaining factors, Recipient received final judgments on the merits of his claims for door-to-door transportation to the ATF through the prior appeals, he (through his parents) was a party in the prior appeals, he was provided with full and fair opportunity to litigate the issue of whether he was entitled to door-to-door transportation, and the determinations in the prior appeals that Recipient was not entitled to door-to-door transportation were essential to the judgment in the matter before ALJ Reno and now before this Court. Thus, ALJ Reno and BHA correctly concluded that the second, third, and fourth factors for collateral estoppel were satisfied and, therefore, that collateral estoppel applies to the issue of whether Recipient is entitled to door-to-door transportation to the ATF.

17

In reaching this conclusion, we note that Recipient does not argue that facts or circumstances relating to the provision of transportation services in his area have changed since he pursued the earlier appeals. For instance, he does not assert that zone one has been expanded, such that he now qualifies for door-to-door transportation by Pathways. Nor does he assert that other providers are now providing door-to-door transportation services from the area of his residence to the ATF, such that he, too, should be entitled to receive the same service. Instead, he continues to assert that, despite the fact that no provider is willing to provide door-to-door transportation services from his residence to the ATF, a provider should be forced to provide the service.[11] As noted above, this issue has been fully litigated on more than one occasion, and Recipient is precluded from re-litigating this issue in the appeal now before the Court.[12]

## B. Equal Protection

Recipient next argues that ALJ Reno erred in not recognizing that DHS violated his equal protection rights, as guaranteed by the Fourteenth Amendment to the United States Constitution. The essence of Recipient's equal protection argument is that prior to Pathways' discontinuance of his door-to-door transportation to the ATF in 2011, he could attend the program five days a week, and now, because

---

[11] We understand from the record that GCHS has attempted to find a willing and qualified provider for Recipient's door-to-door services. We certainly encourage GCHS to continue those efforts.

[12] As we have disposed of this portion of the appeal on the basis of collateral estoppel, we need not address Recipient's arguments concerning: (1) whether ALJ Reno erred in failing to consider the relevant contractual obligations and that all previous rulings in this case rely upon false testimony that no contract existed; (2) whether ALJ Reno misinterpreted 42 C.F.R. § 431.51, regarding the choice of provider; and (3) whether ALJ Reno erred in asserting that DHS can, by denying access to all alternate forms of Waiver-eligible transportation, force families of Waiver participants to involuntarily provide transportation.

18

Pathways no longer offers door-to-door transportation services, he can only attend two days a week. Recipient argues that this change constitutes a denial of services that violates his right to equal protection of the laws.

The Equal Protection Clause of the United States Constitution directs that no state shall "deny to any person . . . the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause 'does not obligate the government to treat all persons identically, but merely assures that all similarly situated persons are treated alike.'" *Armstrong Cty. Mem'l Hosp. v. Dep't of Pub. Welfare*, 83 A.3d 317, 322 (Pa. Cmwlth. 2014) (quoting *Small v. Horn*, 722 A.2d 664, 672 (Pa. 1998)). "The nature of the governmental action at issue in an equal protection claim determines the nature of the analysis courts must employ." *Garrison v. Dep't of Corr.*, 16 A.3d 560, 564 (Pa. Cmwlth. 2011). "When the challenged governmental action neither burdens a fundamental or important right nor creates a suspect or quasi-suspect classification, courts apply the so-called rational basis test, and will affirm the governmental action as long as the action is rationally related to a legitimate governmental interest." *Id*. The Equal Protection Clause prohibits public entities from discriminating against the intellectually disabled without a rational basis. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 445-47 (1985).

With this framework in mind, we are also cognizant that "[i]t is well established that 'issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter.'" *Cornell Narberth, LLC v. Borough of Narberth,* 167 A.3d 228, 243 (Pa. Cmwlth. 2017) (quoting *Boniella v. Cmwlth.*, 958 A.2d 1069, 1072 n.8 (Pa. Cmwlth. 2008)); *see also* Pa. R.A.P. 2119(a) (requiring argument of issues to be "followed by such discussion and citation to authorities as are deemed pertinent"). While Recipient generally argues Pathways'

19

decision to no longer provide door-to-door transportation service to him has resulted in hardship, he does not develop an equal protection argument. Recipient does not identify other similarly situated individuals who have been treated differently than he has with regard to door-to-door transportation services under the Waiver program. We conclude that Recipient has failed to establish a violation of his equal protection rights.

## IV. CONCLUSION

Accordingly, we must affirm DHS's final administrative action order.

_____
P. KEVIN BROBSON, Judge

# THE COMMONWEALTH COURT OF PENNSYLVANIA

Luke Bussoletti,                                 :
                        Petitioner       :
                                                 :
        v.                                       :       No. 1230 C.D. 2019
                                                 :
Department of Human Services,        :
                        Respondent    :


# **O R D E R**


AND NOW, this 5th day of November, 2020, the final administrative action order of the Department of Human Services, dated July 30, 2019, is AFFIRMED.



_____
P. KEVIN BROBSON, Judge